# EXHIBIT A

SENATE THIRD READING
SB 1235 (Glazer)
As Amended  June 13, 2018
Majority vote

SENATE VOTE:  21-11

| Committee | Votes | Ayes | Noes |
|---|---|---|---|
| **Banking** | 9-0 | Limón, Chen, Acosta, Burke, Steinorth, Gabriel, Grayson, Mark Stone, Weber | |

**SUMMARY**: Creates a new division within the Financial Code, titled "Commercial Financing Disclosures" (Division 9.5, Financial Code Section 22800 et seq) requiring providers of commercial financing, as defined, to provide disclosures about the cost of that financing to the recipients of the financing, as specified.  Specifically, this bill:

1) Defines the terms commercial loan and commercial open-end credit program as they are defined in California Financing Law (CFL.)

2) Defines an accounts receivable purchase transaction as a transaction of $5,000 or more as part of an agreement requiring a recipient sell to the provider all or a portion of accounts, as specified, that are owed to the recipient per the agreement.

3) Defines commercial financing as intended by the recipient for use primarily for other than personal, family, or household purposes.

4) Defines a provider as a person who extends a specific offer of commercial financing to a recipient, as specified.

5) Applies the provisions of this bill to each provider that consummates or arranges more than five commercial financing transactions during a calendar year.

6) Expressly exempts depository institutions, commercial financing transactions secured by real property, and commercial leasing transactions, as defined, from the provisions of this bill.

7) Requires each provider to disclose all of the following information to a recipient at the time the provider extends a specific commercial financing offer to that recipient, and to obtain the recipient's signature on the disclosure before consummating the commercial financing transaction:

   a) The principal loan amount or the purchase price labeled "Total Amount of Funds Provided," less any specified fees.

   b) The total amount of funds to be paid by the recipient, labeled "Total of Payments" including all fees, as specified.

   c) The total dollar cost of the commercial financing transaction, which must be labeled "Total Dollar Cost of Financing," and must be calculated by subtracting the total amount of funds provided from the total of payments.

8) Provides that in addition, until January 1, 2023, providers of commercial loans, commercial open-end credit programs, and certain types of accounts receivable purchase transactions (i.e., merchant cash advances) must include an Estimated Annualized Cost of Capital (EACC) in the disclosures they are required to provide recipients, at the time they extend specific commercial financing offers to those recipients. Providers of other types of accounts receivable purchase transactions (i.e., factoring) are not required to calculate or disclose an EACC.

   a) The Estimated Annualized Cost of Capital is defined as the total cost of capital, expressed as a percentage of the amount financed and presented as an annual equivalent.

   b) For open-end lines of credit, the EACC must be calculated by multiplying the monthly periodic rate applied by the provider to the outstanding balance by 12.

   c) For other types of commercial financing (i.e., for closed-end loans and merchant cash advances), the EACC must be calculated by: (i) dividing the total dollar cost of financing by the total amount of funds provided; (ii) multiplying the result of (i), above, by 365; (iii) dividing the result of (ii) by the term or estimated term of the financing in days; and (iv) multiplying the result of (iii) by 100.

   d) Providers are required to round the EACC to the nearest whole number and to include the following disclosure in connection with the EACC: "This estimate includes all charges and fees incurred for the financing, assuming you make all payments when scheduled and adhere to the terms of the agreement. This number is based on the estimated term. If the actual term is shorter than estimated, the annualized cost of capital may be higher than shown, and if the actual term is longer than estimated, the annualized cost of capital may be lower. This is not an Annual Percentage Rate (APR)."

9) Provides that recipients may elect to receive the disclosures described in 6) and 7), above, either electronically or in writing. If the disclosures are provided in writing, they must be printed in at least 10-point font. If they are provided electronically, they must be provided in a format that allows the recipient to review them on an electronic device that the recipient can independently access, and in a format that allows the disclosures to be printed out by the recipient in a minimum of 10-point font.

**EXISTING LAW:**

1) Provides for the California Financing Law (CFL; Financial Code Section 22000 et seq.), administered by the Department of Business Oversight, which regulates secured and unsecured, consumer-purpose and commercial-purpose loans made by nondepository institutions, as specified, and requires persons engaged in the business of making consumer and commercial loans, as defined, to obtain finance lender licenses.

2) Defines commercial loan and commercial open-end credit program under the CFL (Financial Code Sections 22502 and 22650).

3) Provides that every loan with a principal amount under $5,000, which is regulated under the CFL, is considered a consumer loan (Financial Code Sections 22203 and 22204).

**COMMENTS**: This bill requires disclosures to be provided to small businesses engaged in borrowing across four different types of commercial financing:

1) **Closed-end loans** are the most familiar of the four types of financing. These loans are offered in a fixed amount, for a fixed term, at a fixed (or variable) interest rate, and require money to be paid back on a fixed schedule.

2) **Open-end lines of credit** are similar to a home equity line of credit. The borrower is provided with a credit line, which can be drawn down in whole or in part, at the borrower's discretion and on the borrower's desired schedule. Fees may be charged in connection with each draw. Open-end lines of credit typically lack fixed terms; they are often available, until closed by either the borrower or the creditor. Interest on open-end lines of credit is owed on the amount drawn, not on the total amount of the credit line. Payments are due on a fixed schedule.

3) **Merchant cash advances** generally involve a lender extending a fixed cash advance to the small business in exchange for a percentage of the small business's future receipts. The amount owed by the small business (a set percentage of its receipts) is calculated and payable on a daily, weekly, or monthly schedule or on another schedule mutually agreed to by the provider and the small business.

    Although the percentage the small business owes the provider remains constant, the amount paid to the provider varies, based on the business' daily, weekly, or monthly cash flows. Because the payments owed by the small business closely track receipts received by the business from its customers, merchant cash advances are popular among businesses with seasonal or other types of irregular cash flow. Rather than taking out a loan and having to make a fixed payment every month, regardless of its cash receipts, a business knows it will owe no more than a set percentage of its receipts. Because of the way in which they are structured, merchant cash advances do not have fixed terms; they last as long as it takes the small business to pay back the advance.

4) **Accounts receivable financing**, also known as factoring, generally involves the loan provider purchasing a set amount of accounts receivable, in advance, at a discount, from a business. The discount price builds in a profit margin for the Factor that has purchased the accounts receivable that is intended to reflect the cost of capital. The advantage for the small business is it receives money immediately. The Factor, however, must wait to collect the receivables, along with the risk that some portion of the receivables may not be collectable. Because of the way in which factoring arrangements are structured, there is no set term or repayment amount; the purchase price of the accounts is paid to the small business up front, and the factor collects receipts over time as customers of the business make payments on the underlying accounts. Generally, small businesses using factoring would not be provided with an EACC.

Because the vast majority of small business financing available in California is offered by companies that are not subject to the CFL, this bill is drafted outside of that law. Entities providing commercial financing include, but are not limited to:

1) Traditional banks.

2) Banks acting in partnership with nondepository institutions

3) Nondepository institutions making direct loans under the CFL.

4) Nondepository institutions making cash advances or offering factoring. These activities are not, generally speaking, regulated under the CFL.

This bill requires these entities, other than banks acting on their own behalf, to provide disclosures. The bill also requires the disclosure provisions to apply to merchant cash advances and factoring arrangements, not currently regulated by the CFL.

Commercial financing entities that use the "bank partnership" model are also included. The bank partnership model places the nondepository lender as the "face" the borrower sees via an online lending platform. The business entity receives financing from the nondepository lender, however, it is the bank partner that acturally provides the loan proceeds. Some examples of banks that partner with nondepositories using bank partnership models include Celtic Bank, WebBank, and MetaBank.

This bill requires some entities currently subject to licensure in California and many more entities not currently subject to licensure in California to provide small business borrowers with a standardized set of disclosures those borrowers can use to compare financing options. By requiring small business borrowers to be given a standard set of disclosures, this bill's author hopes to provide small business owners with information they need to make good financing decisions, without creating unnecessary licensing burdens on the entities extending that financing.

However, the bill lacks oversight and enforcement to ensure that the disclosure requirements are consistently followed and adhered to across multiple commercial loan providers using multiple lending mechanisms. Without a licensing, registration, or enrollment requirement, there is no regulator, and without a regulator, there are no regular examinations, nor any administrative enforcement mechanisms with which to sanction entities for failing to provide disclosures in accordance with the bill.

When a bill such as this is silent on both its oversight and enforcement mechanisms, the default mechanism is the courts. Courts, however, are used as an after-the-fact remedy and do little to provide structure and consistency in a diverse lending environment.

Using the EACC approach is unique but untested. The requirements placed on various types of commercial finance providers are complicated and run the risk of providing confusing and inconsistent results for borrowers to use as a method to compare lenders.

**Analysis Prepared by**: William Herms / B. & F. / (916) 319-3081          FN: 0003623