# EXHIBIT B

SENATE THIRD READING
SB 1235 (Glazer)
As Amended  August 24, 2018
Majority vote

SENATE VOTE:  21-11

| Committee | Votes | Ayes | Noes |
|---|---|---|---|
| **Banking** | 9-0 | Limón, Chen, Acosta, Burke, Steinorth, Gabriel, Grayson, Mark Stone, Weber | |
| **Appropriations** | 11-0 | Gonzalez Fletcher, Bloom, Bonta, Calderon, Carrillo, Chau, Eggman, Friedman, Nazarian, Quirk, Reyes | |

**SUMMARY**: Requires a commercial lender who facilitates commercial financing to a borrower to disclose specified information relating to that transaction to the recipient, as specified. Specifically, **this bill**:

Requires the Commissioner of the Department of Business Oversight (DBO) to adopt regulations governing the required disclosures commercial lenders must make to commercial borrowers.

1) Requires the Commissioner adopt regulations concerning the annualized rate disclosure, as specified, including:

   a) The determination of the appropriate method to express the annualized rate disclosure.

   b) When providers shall be permitted to disclose an estimated annualized rate, and how such an estimate shall be calculated.

   c) Requirements concerning the time, manner, and format of the disclosure.

2) Requires the Commissioner adopt regulations describing the following:

   a) The total amount of funds provided

   b) The total dollar cost of the financing.

   c) The term or estimated term.

   d) The method, frequency, and amount of payment.

   e) A description of prepayment policies.

2) Requires the Commissioner adopt alternative regulations for providers who offer financing that is factoring or asset-based lending, as specified.

3) Requires the Commissioner adopt regulations concerning the time, manner, and format of the applicable disclosures.

4) Provides that the following are not covered by this division:

   a) A provider that is a depository institution.

   b) A provider that is a lender regulated under the federal Farm Credit Act.

   c) A commercial financing transaction secured by real property.

   d) A commercial financing transaction in which the recipient is a dealer, as defined by Vehicle Code Section, as specified.

   e) Any person who makes five or fewer commercial financing transactions in California in a 12-month period, as specified.

5) States that a provider shall not be required to comply with the disclosure requirements of the bill until the final regulations are adopted by the Commissioner, as specified.

6) Provides that lenders that are subject to the California Finance Law (CFL) be subject to examination and enforcement by the Commission under the CFL, as specified.

7) Adds to existing annual reporting requirements that CFL licensees report all loans made through third-party financial institutions in connection with a contractual agreement with the licensee.

8) Adds definitions and clarifications where required.

9) Provides a sunset date of January 1, 2024.

**EXISTING LAW:**

1) Provides for the California Financing Law (CFL; Financial Code Section 22000 et seq.), administered by the Department of Business Oversight, which regulates secured and unsecured, consumer-purpose and commercial-purpose loans made by nondepository institutions, as specified, and requires persons engaged in the business of making consumer and commercial loans, as defined, to obtain finance lender licenses.

2) Defines commercial loan and commercial open-end credit program under the CFL (Financial Code Sections 22502 and 22650).

3) Provides that every loan with a principal amount under $5,000, which is regulated under the CFL, is considered a consumer loan (Financial Code Sections 22203 and 22204).

**FISCAL EFFECT**: According to the Assembly Appropriations Committee, likely minor and absorbable costs for DBO to promulgate rules and regulations around disclosure requirements. While DBO could incur significant costs if the development of these disclosures requires additional staff or expertise, this is unlikely to be the case.

**COMMENTS**: Recent amendments to the bill delete definitions and requirements associated with the Estimated Annualized Cost of Capital and insert language requiring DBO to adopt regulations governing the required disclosures commercial lenders must make to commercial borrowers.

This bill requires disclosures to be provided to small businesses engaged in borrowing across multiple types of commercial financing:

1) **Closed-end loans** are the most familiar of the four types of financing. These loans are offered in a fixed amount, for a fixed term, at a fixed (or variable) interest rate, and require money to be paid back on a fixed schedule.

2) **Open-end lines of credit** are similar to a home equity line of credit. The borrower is provided with a credit line, which can be drawn down in whole or in part, at the borrower's discretion and on the borrower's desired schedule. Fees may be charged in connection with each draw. Open-end lines of credit typically lack fixed terms; they are often available, until closed by either the borrower or the creditor. Interest on open-end lines of credit is owed on the amount drawn, not on the total amount of the credit line. Payments are due on a fixed schedule.

3) **Merchant cash advances** generally involve a lender extending a fixed cash advance to the small business in exchange for a percentage of the small business's future receipts. The amount owed by the small business (a set percentage of its receipts) is calculated and payable on a daily, weekly, or monthly schedule or on another schedule mutually agreed to by the provider and the small business.

   Although the percentage the small business owes the provider remains constant, the amount paid to the provider varies, based on the business' daily, weekly, or monthly cash flows. Because the payments owed by the small business closely track receipts received by the business from its customers, merchant cash advances are popular among businesses with seasonal or other types of irregular cash flow. Rather than taking out a loan and having to make a fixed payment every month, regardless of its cash receipts, a business knows it will owe no more than a set percentage of its receipts. Because of the way in which they are structured, merchant cash advances do not have fixed terms; they last as long as it takes the small business to pay back the advance.

4) **Asset-based lending** means a transaction in which advances are made from time to time contingent on a recipient providing as collateral a legally enforceable claim for payment held by a recipient for goods the recipient has supplied or services the recipient has rendered that have been ordered but for which payment has not yet been made.

5) **Accounts receivable financing**, also known as factoring, generally involves the loan provider purchasing a set amount of accounts receivable, in advance, at a discount, from a business. The discount price builds in a profit margin for the Factor that has purchased the accounts receivable that is intended to reflect the cost of capital. The advantage for the small business is it receives money immediately. The Factor, however, must wait to collect the receivables, along with the risk that some portion of the receivables may not be collectable. Because of the way in which factoring arrangements are structured, there is no set term or repayment amount; the purchase price of the accounts is paid to the small business up front, and the factor collects receipts over time as customers of the business make payments on the underlying accounts. Generally, small businesses using factoring would not be provided with an EACC.

Because the vast majority of small business financing available in California is offered by companies that are not subject to the CFL, this bill is drafted outside of that law. Entities providing commercial financing include, but are not limited to:

1) Traditional banks.

2) Banks acting in partnership with nondepository institutions

3) Nondepository institutions making direct loans under the CFL.

4) Nondepository institutions making cash advances or offering factoring. These activities are not, generally speaking, regulated under the CFL.

According to the author:

> Small business owners, especially those entrepreneurs just starting to get their businesses off the ground, often have limited access to traditional bank loans. Instead, they turn to non-traditional forms of financing, many of which are now offered over the Internet. These innovative lending products can be life-savers for a business, but they can also be difficult to understand and compare to each other and to traditional loans. Surveys show that many business owners do not understand the interest rates, prepayment rules and other terms of the financing that is available today and support more disclosure.

This bill requires additional disclosures be provided to businesses when engaging in commercial financing. The DBO will develop the regulations necessary to implement consistent and effective disclosures.

**Support**. A coalition representing community advocacy organizations, nonprofit community development financial institutions, and research and nonprofit organizations argues that this bill is a common sense bill that will "clearly communicate to small businesses what their financing would cost." The coalition notes that this bill will become the first small business "truth in lending" law in the country.

**Opposition**. A number of lending groups and business groups oppose this bill. The Small Business Finance Association writes that DBO "lacks the expertise to implement the bill" and that this bill generates significant uncertainty for small businesses. The Electronic Transactions Association argues this bill "will create confusion and uncertainty for…customers trying to make informed decisions about the cost of financing products."

**DBO's role**. Opponents to this bill contend that that DBO currently lacks the expertise or in-house knowledge to develop these disclosures without seeking outside help, thereby leading to additional staffing costs for DBO. However, this concern is likely overstated because DBO can solicit input from technical experts as part of the normal rulemaking process.

**Other amendments.** In addition to change described above, a series of recent author amendments made other assorted changes to the bill. The August 21st amendments modified the definition of "lease financing" and clarified the use of fees and charges as part of the disclosures developed by DBO, among other provisions. The August 23rd amendments removed a standalone reporting requirement that was previously a provision in AB 2984 (Limon), of the

**SB 1235**
Page 5

2017-18 Legislative Session, which was held on this committee's Suspense File. Finally, August 24th amendments made nonsubstantive and technical changes.

**Analysis Prepared by**: William Herms / B. & F. / (916) 319-3081                FN: 0005060