# EXHIBIT C

87 FR 76551-01, 2022 WL 17668915(F.R.)
RULES and REGULATIONS
BUREAU OF CONSUMER FINANCIAL PROTECTION
12 CFR Part 1026
[Docket No. CFPB-2022-0070]

Intent To Make Preemption Determination Under the Truth in Lending Act (Regulation Z)

Thursday, December 15, 2022

AGENCY: Bureau of Consumer Financial Protection.

**\*76551** ACTION: Notification of intent to make preemption determination; request for comment.

SUMMARY: The Consumer Financial Protection Bureau (CFPB) has received a written request to make a determination that the Truth in Lending Act (TILA) preempts a New York State commercial financing law with respect to certain provisions. The CFPB is publishing this notification of intent to make a preemption determination about that law and has made a preliminary conclusion that this law is not preempted by TILA. The CFPB is also providing notice that it is considering whether to make a preemption determination regarding State laws in California, Utah, and Virginia that are potentially similar to the New York law. The CFPB is soliciting public comment pursuant to Regulation Z.

DATES: Comments must be received on or before January 20, 2023.

ADDRESSES: You may submit comments, identified by Docket No. CFPB-2022-0070, by any of the following methods:
1. Federal eRulemaking Portal: https://www.regulations.gov. Follow the instructions for submitting comments.

2. Email: 2022-TILAPreemption@cfpb.gov. Include Docket No. CFPB-2022-0070 in the subject line of the message.

3. Mail/Hand Delivery/Courier: Comment Intake—TILA Preemption Determination, c/o Legal Division Docket Manager, Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20552.

Because paper mail in the Washington, DC area and at the CFPB is subject to delay, commenters are encouraged to submit comments electronically.

Instructions: The CFPB encourages the early submission of comments. All submissions must include the document title and docket number. Commenters are encouraged to submit comments electronically. In general, all comments received will be posted without change to https://www.regulations.gov. Comments will be available for public inspection and copying at 1700 G Street NW, Washington, DC 20552, on official business days between the hours of 10 a.m. and 5 p.m. Eastern time. You can make an appointment to inspect the documents by telephoning 202-435-7275.

All submissions in response to this notification, including attachments and other supporting materials, will become part of the public record and subject to public disclosure. Proprietary information or sensitive personal information, such as account numbers or Social Security numbers, or names of other individuals, should not be included. Submissions will not be edited to remove any identifying or contact information.

FOR FURTHER INFORMATION CONTACT: Joel Singerman, Senior Counsel, Office of Regulations, or Christopher Shelton or Anand Das, Senior Counsels, Legal Division, at 202-435-7700. If you require this document in an alternative electronic format, please contact CFPB_Accessibility@cfpb.gov.

SUPPLEMENTARY INFORMATION:

**Background on TILA and Reg Z Preemption Provisions**

The CFPB has received a request to make a preemption determination involving certain disclosure provisions in TILA. Congress enacted TILA in 1968 because it found that "competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit." [FN1] TILA is designed to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." [FN2] TILA requires creditors to use specified formulas to determine credit costs and to provide cost disclosures to consumers before consummation of "consumer credit" transactions,[FN3] which is credit that is "offered or extended . . . primarily for personal, family, or household purposes." [FN4] Regulation Z implements TILA.[FN5]

TILA does not "annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of [TILA], and then only to the extent of the inconsistency." [FN6] TILA authorizes the CFPB to determine whether any inconsistency exists between chapters 1, 2, and 3 of TILA and State laws.[FN7] Regulation Z provides that "[a] State law is inconsistent if it requires a creditor to make disclosures or take actions that contradict the requirements of the Federal law." [FN8]

Accordingly, TILA does not preempt the field, and State disclosures are entirely compatible with Federal disclosures under TILA and Regulation Z, with the narrow exception of when they are "contradictory." The Board of Governors of the Federal Reserve System (Board), which formerly administered Regulation Z, framed the standard as follows: "A state law is contradictory, and therefore preempted, if it significantly impedes the operation of the federal law or interferes with the purposes of the federal statute." [FN9] The Board noted that Regulation Z articulated two categories of "contradictory" State laws: "A state law is contradictory if it requires the use of the same term to represent a different *76552 amount or a different meaning than the Federal law, or if it requires the use of a term different from that required in the Federal law to describe the same item." [FN10] At the same time, the Board noted that these two categories were not entirely exhaustive, because they would not be apt in a context where the preemption issue at hand does not "deal with disclosures of terms and amounts." [FN11] The CFPB is considering whether it should clarify the Board's articulation of the applicable preemption standard, and it requests comment on how the CFPB should articulate the standard for preemption in this and future determinations.

TILA authorizes the CFPB to make a determination of whether a State law requirement is preempted, upon its own motion or upon the request of a creditor, State, or other interested party.[FN12] Regulation Z implements this provision in TILA.[FN13] Requests for preemption determinations must be submitted in accordance with appendix A to Regulation Z.[FN14] Appendix A also sets forth processes the CFPB must follow in issuing preemption determinations, either on request or on its own motion.[FN15]

In addition, section 554(e) of the Administrative Procedure Act authorizes any agency, in its sound discretion, to issue a declaratory order to terminate a controversy or remove uncertainty.[FN16] Section 554(e) of the Administrative Procedure Act provides an additional, independent source of authority for this proceeding.

**The Preemption Request**
The CFPB received a request from a business trade association asking it to determine that TILA preempts certain provisions in New York State's Commercial Financing Law, sec. 801 et seq. (the New York law).[FN17] The request is available as supporting and related material for this proceeding on Regulations.gov. Similar to TILA, the New York law requires financial disclosures before consummation of covered transactions, although it applies to "commercial financing" instead of consumer credit. It requires providers [FN18] to issue disclosures when "extending a specific offer" for various types of commercial financing.[FN19]

The request asserted that TILA preempts the New York law with respect to its use of the terms "finance charge" and "annual percentage rate" (APR), notwithstanding that the statutes govern different categories of transactions. Both statutes require these disclosures: TILA requires creditors to disclose information about "finance charges" and "APRs" before consummation of open- and closed-end consumer credit transactions,[FN20] while the New York law requires providers to disclose information about "finance charges" and "APRs" or "estimated APRs" for various types of commercial financing.[FN21]

In addition to acknowledging that, unlike TILA, the New York law governs commercial transactions, the request focused on what it alleged are material differences between how the State and Federal law use the terms "finance charge" and "APR," and alleged that these differences make the New York law inconsistent with Federal law for purposes of preemption.[FN22]

For example, the request noted that the New York law defines "finance charge" to include any charge imposed by a "provider," which includes "a person who solicits and presents specific offers of commercial financing on behalf of a third party." [FN23] The request stated that the definition is broader than the Federal definition, under which the requester asserted a "finance charge" for non-mortgage transactions includes certain broker fees only if the creditor requires the use of the broker.

Additionally, the request asserted that the "estimated APR" disclosure that the New York law requires for certain transactions is less precise than the APR calculation under TILA and Regulation Z, and that the New York law requires certain assumptions about payment amounts and payment frequencies in order to calculate APR and estimated APR, whereas TILA does not require similar assumptions. The request also asserted that the New York law requires providers to calculate APRs for open-end transactions using TILA's closed-end APR requirements instead of TILA's open-end APR requirements.

The request stated that these types of differences could lead to variances in the disclosures required under State and Federal law. The request asserted that the Federal law and regulation therefore preempt the New York law. The request pointed to administrative precedent [FN24] *76553 and Regulation Z commentary [FN25] to support this conclusion.

The request also asserted that the New York law impedes the operation of Federal law or interferes with the intent of the Federal scheme, even if it does not contradict TILA in the specific manner described in Regulation Z. The request asserted that failing to enforce TILA's definitions of "finance charge" and "APR," even across different financing types, would impede and degrade the benefits of ensuring uniform disclosures, which aid consumer understanding and enable consumers to effectively compare financing options. The request asserted that the inconsistencies between TILA and the New York law could lead to confusion or misunderstanding among borrowers, including small business owners who may use both consumer credit and commercial financing to fund business expenses.

**Preliminary Preemption Analysis**
The CFPB has decided to initiate a proceeding to make a preemption determination regarding the New York law in response to the request. In evaluating the request concerning the New York law, the CFPB also became aware of similar laws in other States. The CFPB is, on its own motion, providing notice that it may make preemption determinations regarding potentially similar State laws in California,[FN26] Utah,[FN27] and Virginia [FN28] as part of this proceeding.

Beginning with the New York law, the CFPB's preliminary view is that TILA does not preempt the New York law on the grounds the request asserts. That is, the State and Federal laws do not appear "contradictory" for preemption purposes.

The Bureau notes that the statutes govern different transactions, so the New York law appears to be far afield of a law that contradicts TILA and Regulation Z. TILA requires creditors to disclose the finance charge and APR only for "consumer credit" transactions, which the statute defines as credit that is "primarily for personal, family, or household purposes." [FN29] The New York law, on the other hand, requires the disclosures only for "commercial financing," specifically defined as financing "the proceeds of which the recipient does not intend to use primarily for personal, family, or household purposes." [FN30]

The Bureau preliminarily disagrees with the request that the New York law significantly impedes the operation of TILA or interferes with the purposes of the Federal scheme. As relevant here, a primary purpose of TILA is to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to the consumer and avoid the uninformed use of credit.[FN31] The differences between the New York and Federal disclosure requirements do not frustrate these purposes because lenders are not required to provide the New York disclosures to consumers seeking consumer credit. Consumers applying for consumer credit should continue receiving only TILA disclosures, which, as normal, will assure meaningful disclosure of credit terms and allow the consumers to compare like products when shopping for financing options.

Based on the foregoing, the CFPB's preliminary interpretation is that TILA does not preempt the New York law's use of the terms "finance charge," "APR," or "estimated APR."

As noted above, the CFPB is also considering making determinations regarding whether TILA preempts State laws in California,[FN32] Utah,[FN33] and Virginia [FN34] that prescribe disclosures in certain commercial transactions. The CFPB

has conducted a preliminary review of these laws, which are similar in relevant respects to the New York law because they do not apply to consumer credit transactions that are within the scope of TILA. Accordingly, the CFPB's preliminary conclusion is that TILA does not preempt these State laws. As an additional potential basis—but not necessary to the Bureau's preliminary conclusion—the Bureau notes that several of these laws do not appear to require use the terms "finance charge" or "APR" in a manner that would be different than TILA and Regulation Z if they were applicable. The CFPB encourages commenters to provide information about any relevant differences in these State laws that would affect the CFPB's preemption analysis and final determination with respect to them. The Bureau's focus on and preliminary conclusion about these State laws is not intended to indicate or imply anything about the laws of any other States.

**Conclusion**

In light of the foregoing, the CFPB is publishing this notification of its intent to make a preemption determination and solicit comment from the public. After the comment period closes, the CFPB will consider any comments and publish a notification of final determination in the Federal Register.

Rohit Chopra,

Director, Consumer Financial Protection Bureau.

[FR Doc. 2022-27059 Filed 12-14-22; 8:45 am]

BILLING CODE 4810-AM-P

**Footnotes**

1   15 U.S.C. 1601(a).

2   Id.

3   See 15 U.S.C. 1637(a), 1637a, 1638(a) (requiring disclosures for "consumer credit" transactions); but see 12 CFR 1026.12(a) (prohibiting the issuance of credit cards in certain circumstances, even if the credit card is to be used primarily for a business purpose).

4   See 15 U.S.C. 1602(i) (defining "consumer" credit to mean, in part, credit "primarily for personal, family, or household purposes"); see also 12 CFR 1026.2(a)(12).

5   See generally, 12 CFR 1026.1, et seq.

6   15 U.S.C. 1610(a)(1).

7   Id.

8       12 CFR 1026.28(a)(1).

9       48 FR 4454, 4455 (Feb. 1, 1983); 50 FR 25068 (June 17, 1985); 53 FR 3332 (Feb. 5, 1988); 55 FR 13282 (Apr. 10, 1990); 55 FR 42025, 42026 (Oct. 17, 1990).

10      12 CFR 1026.28(a)(1).

11      48 FR 4454, 4455 (Feb. 1, 1983). Additionally, the Board articulated the following principles: (1) for purposes of making preemption determinations, State law is deemed to require the use of specific terminology in the State disclosures if the State statute uses certain terminology in the disclosure provision; (2) a State disclosure does not "describe the same item" under Regulation Z, § 1026.28(a)(1) if the State disclosure "is not the functional equivalent of a Federal disclosure;" and (3) preemption occurs only where an actual inconsistency exists between the State and Federal laws. See 48 FR 4454, 4455 (Feb. 1, 1983). The Board did not explicitly mention these principles in every preemption determination, but it did reference them from time to time. See, e.g., 50 FR 8737 (Mar. 5, 1985); 55 FR 13282 (Apr. 10, 1990).

12      15 U.S.C. 1610(a)(2).

13      See 12 CFR 1026.28(a)(1).

14      12 CFR part 1026, app. A.

15      See id.

16      5 U.S.C. 554(e).

17      Letter from Stephen Denis, CEO of the Small Business Finance Association, to Jocelyn Sutton, Executive Secretary of the Consumer Financial Protection Bureau (Jan. 15, 2021). The New York law is available at https://www.nysenate.gov/legislation/laws/FIS/A8.

18      The New York law defines "provider" to mean, in part, "a person who extends a specific offer of commercial financing to a recipient" and, unless otherwise exempt, "a person who solicits and presents specific offers . . . on behalf of a third party." See N.Y. Comm. Fin. Law, sec. 801(h).

19  See generally, N.Y. Comm. Fin. Law, secs. 803 (sales-based financing disclosures), 804 (closed-end commercial financing disclosures), 805 (open-end commercial financing disclosures), 806 (factoring transaction disclosures), and 807 (disclosures for other forms of commercial financing).

20  See, e.g., 15 U.S.C. 1637(a), 1637a, 1638(a) (setting forth requirements for open-end transactions, open-end transactions secured by a principal dwelling, and closed-end transactions, respectively); see also 12 CFR 1026.6, 1026.40 (open-end transactions), and 1026.18, 1026.37(l), 1026.38(o) (closed-end transactions).

21  See generally, N.Y. Comm. Fin. Law, secs. 803 (sales-based financing disclosures), 804 (closed-end commercial financing disclosures), 805 (open-end commercial financing disclosures), 806 (factoring transaction disclosures), and 807 (disclosures for other forms of commercial financing).

22  The request also acknowledged similarities between the State and Federal law. Both Regulation Z and the New York law state that "finance charge" means "the cost of [financing] as a dollar amount. It includes any charge payable directly or indirectly by the [recipient] and imposed directly or indirectly by the [issuer] as an incident to or a condition of the extension of [financing]." See Regulation Z, 12 CFR 1026.4(a); N.Y. Comm. Fin. Law, sec. 801(e). Further, the New York law specifically refers to Regulation Z in defining "finance charge" and "APR." It states that the term finance charge "includes all charges that would be included under 12 CFR 1026.4 as if the transaction were subject to" that provision. N.Y. Comm. Fin. Law, sec. 801(e). And it states that the terms "APR" and "estimated APR" must, among other things, be calculated in accordance with the Federal Truth in Lending Act and Regulation Z, "regardless of whether such act or such regulation would require such a calculation." See N.Y. Comm. Fin. Law, secs. 803(c), 806(c) (governing "estimated APR" disclosure for sales-based commercial financing and factoring transactions, respectively); secs. 804(c), 805(c), and 807(c) (governing "APR" disclosure for closed-end commercial financing, open-end commercial financing, and other commercial financing not covered by categories, respectively).

23  See N.Y. Comm. Fin. Law, sec. 801(e), (h) (sec. 801(e) defines "finance charge," and sec. 801(h) defines "provider").

24  The request pointed to a TILA preemption determination that the Board issued in 1982, in which the Board stated that State laws requiring finance charge or APR disclosures will face greater scrutiny because the terms are so significant under TILA. As the request noted, the Board stated in that publication, "since these disclosures are particularly significant, any contradiction in of the corresponding federal disclosure would interfere with the intent of the federal scheme." See 47 FR 16202 (Apr. 15, 1982).

25  The request referred to comment 28(a)-2, which clarifies that "a State law" is inconsistent for purposes of preemption if it uses "finance charge" to include fees beyond Federal law or requires a different label for "APR." The request asserted that the reference to "a State law" was intentionally broad—that, because "finance charge" and "APR" are central to TILA and Regulation Z's disclosure regime, the commentary was intended to clarify the limitations of finance charges and APRs without limitation to any particular type of State law. The request asserted that this was intended to protect the value of the terms under Federal law.

26  Cal. Fin. Code secs. 22800 to 22805; Cal. Code Regs. tit. 10, ch. 3, subch. 3.

27      Utah Code Ann. secs. 7-27-101 to 7-27-301.

28      Va. Code Ann. secs. 6.2-2228 to 6.2-2238; 10 Va. Admin. Code secs. 5-240-10 to 5-240-40.

29      See 15 U.S.C. 1602(i) (defining "consumer" credit to mean, in part, credit "primarily for personal, family, or household purposes"); see also 15 U.S.C. 1637(a), 1637a, 1638(a) (requiring disclosures for "consumer credit" transactions); but see 12 CFR 1026.12(a) (prohibiting the issuance of credit cards in certain circumstances, even if the credit card is to be used primarily for a business purpose).

30      N.Y. Comm. Fin. Law, sec. 801(b) (emphasis added). The request does not argue that any single transaction can be subject to both New York and TILA disclosure requirements, and the New York Department of Financial Services has proposed a regulatory provision that would explicitly provide that commercial financing "does not include any transaction that is subject to the [Federal TILA], for which a disclosure is provided that is compliant with such Act." Revised Proposal by the New York Department of Financial Services to add 23 NYCRR 600 (Aug. 26, 2022).

31      See 15 U.S.C. 1601(a).

32      Cal. Fin. Code secs. 22800 to 22805; Cal. Code Regs. tit. 10, ch. 3, subch. 3.

33      Utah Code Ann. secs. 7-27-101 to 7-27-301.

34      Va. Code Ann. secs. 6.2-2228 to 6.2-2238; 10 Va. Admin. Code secs. 5-240-10 to 5-240-40.

**End of Document**                                         © 2023 Thomson Reuters. No claim to original U.S. Government Works.