SCOTT M. PEARSON (State Bar No. 173880)
E-mail: spearson@manatt.com
BRAD W. SEILING (State Bar No. 143515)
E-mail: bseiling@manatt.com
MISA K. EIRITZ (State Bar No. 307513)
E-mail: meiritz@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone:  310.312.4000
Facsimile:   310.312.4224

*Attorneys for Plaintiff*
SMALL BUSINESS FINANCE
ASSOCIATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMALL BUSINESS FINANCE ASSOCIATION,<br><br>              Plaintiff,<br><br>       v.<br><br>CLOTHILDE HEWLETT, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation,<br><br>              Defendant. | Case No. 22-cv-08775-RGK-PLA<br><br>**PLAINTIFF SMALL BUSINESS FINANCE ASSOCIATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date: March 27, 2023<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br><br>Complaint Filed:  December 2, 2022<br>Trial Date:        None Set |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

    A.   Rule 12(b)(6) Legal Standard ................................................................ 2

    B.   The Complaint States A Claim Under The First Amendment ............. 3

        1.   The Regulations' Compelled Disclosures Are Not Purely Factual ................................................................................................ 4

            a.   Compelled Inaccurate Disclosures Regarding Sales-Based Financing Transactions ................................. 6

            b.   Compelled Inaccurate Disclosures Regarding Open-End Financing Transactions ................................ 7

            c.   Labeling The Disclosures As "Estimates" Does Not Eliminate Their Inaccuracy Or Deceptiveness ................ 7

        2.   The Regulations' Compelled Disclosures Are Controversial ...................................................................................... 11

        3.   The Disclosures Are Unduly Burdensome And Unjustified ........................................................................................ 13

    C.   The Complaint Adequately Alleges That The Regulations Are Preempted by TILA ............................................................................... 15

        1.   The Regulations Conflict With And Are Preempted By TILA .................................................................................................. 16

        2.   Informal And Non-Final Guidance By The CFPB Should Be Accorded No Deference – Chevron Or Otherwise ............ 19

III.  CONCLUSION .................................................................................................. 20

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- i -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Bev. Ass'n v. City & County of S.F.*,
916 F.3d 749 (9th Cir. 2019) .................................................................. 3, 4, 13

*Am. Meat Inst. v. U.S. Dep't of Agric.*,
760 F.3d 18 (D.C. Cir. 2014) .................................................................. 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................. 3

*Ass'n of Flight Attendants – CWA, AFL-CIO v. Huerta*,
785 F.3d 710 (D.D.C. 2015) .................................................................. 19

*Authentic Beverages Co. v. Tex. Alcoholic Beverages Comm'n*,
835 F. Supp. 2d 227 (W.D. Tex. 2011) .................................................................. 4

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) .................................................................. 2

*Bank of Am. v. City & Cnty. of S.F.*,
309 F.3d 551 (9th Cir. 2002) .................................................................. 15, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................. 3

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .................................................................. 2

*Cal. Chamber of Com. v. Council for Edu. & Rsch. on Toxics*,
29 F.4th 468 (9th Cir. 2022) .................................................................. 3

*California Chamber of Com. v. Becerra*,
529 F. Supp. 3d 1099 (E.D. Cal. 2021), *aff'd sub nom. California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022) .................................................................. 12

*Christensen v. Harris Cnty.*,
529 U.S. 576 (2000) .................................................................. 20

*Cook, Perkiss & Liehe v. N. Cal. Collection Serv. Inc.*,
911 F.2d 242 (9th Cir. 1990) .................................................................. 3

*CTIA - The Wireless Ass'n v. City of Berkeley, Cal.*,
928 F.3d 832 (9th Cir. 2019) .................................................................. 3, 5

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

*Elgindy v. AGA Serv. Co.*,
　　No. 20-cv-06304-JST, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) ............... 9

*Hadley v. Kellogg Sales Co.*,
　　243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................. 10

*Hilsley v. Gen. Mills, Inc.*,
　　No. 3:18-cv-00395-L-BLM, 2021 WL 2290782 (S.D. Cal. Jun. 4, 2021) .......... 9

*Hines v. Davidowitz*,
　　312 U.S. 52 (1941) ............................................................................................ 16

*Ibanez v. Fla. Dep't of Bus. & Prof'l Reg.*,
　　512 U.S. 136 (1994) .......................................................................................... 13

*Joffe v. Google, Inc.*,
　　746 F.3d 920 (9th Cir. 2013) ............................................................................ 18

*Kimberly-Clark Corp. v. D.C.*,
　　286 F. Supp. 3d 128 (D.D.C. 2017) ............................................................. 4, 12

*Lam v. Gen. Mills, Inc.*,
　　859 F. Supp. 2d 1097 (N.D. Cal. 2012) ............................................................ 10

*Linear Tech. Corp. v. Applied Materials, Inc.*,
　　152 Cal. App. 4th 115 (2007) ............................................................................. 9

*Loan Payment Admin. LLC v. Hubanks*,
　　821 Fed. Appx. 687 (9th Cir. 2020) .................................................................. 13

*Make The Rd. N.Y. v. Wolf*,
　　962 F.3d 612 (D.C. Cir. 2020) ......................................................................... 19

*Mier v. Owens*,
　　57 F.3d 747 (9th Cir. 1995) ................................................................................. 2

*Moss v. U.S. Secret Serv.*,
　　572 F.3d 962 (9th Cir. 2009) ............................................................................... 3

*Nat'l Ass'n of Manufacturers v. S.E.C.*,
　　800 F.3d 518 (D.C. Cir. 2015) ...................................................................... 5, 12

*Nat'l Ass'n of Wheat Growers v. Becerra*,
　　468 F. Supp. 3d 1247 (E.D. Cal. 2020) .............................................................. 4

*Nat'l Ass'n of Wheat Growers v. Zeise*,
　　309 F. Supp. 3d 842 (E.D. Cal. 2018) ................................................................ 4

*Reid v. Johnson & Johnson*,
　　780 F.3d 952 (9th Cir. 2015) ............................................................................... 9

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- iii -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

*Rust v. Johnson*,
  597 F.2d 174 (9th Cir.), *cert. denied*, 444 U.S. 964 (1979) ............................. 16

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
  56 F. Supp. 3d 1121 (C.D. Cal. 2014) ................................................................. 2

*United States v. City of Pittsburg, Cal.*,
  661 F.2d 783 (9th Cir. 1981) .............................................................................. 16

*Varcarcel v. Ahold U.S.A., Inc.*,
  577 F. Supp. 3d 268 (S.D.N.Y. 2021) ................................................................ 11

*Video Software Dealers Ass'n v. Schwarzenegger*,
  556 F.3d 950 (9th Cir. 2009) .............................................................................. 15

*Vitiosus v. Alani Nutrition, LLC*,
  No. 21-cv-2048-MMA (MDD), 2022 WL 2441303 (S.D. Cal. Jul. 5,
  2022) ................................................................................................................... 11

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................ 9

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
  471 U.S. 626 (1985) ...................................................................................... passim

## STATUTES

15 U.S.C. § 1601(a) ...................................................................................... 15, 16

Cal. Fin. Code § 22713 ........................................................................................ 13

Cal. Fin. Code § 22780 ........................................................................................ 13

Cal. Fin. Code § 22802 ........................................................................................ 11

Cal. Fin. Code § 22805 ........................................................................................ 13

Truth In Lending Act ..................................................................................... passim

Utah Code Ann. § 7-27-101 ................................................................................ 19

Va. Stat. § 6.2-2228 ............................................................................................. 19

## OTHER AUTHORITIES

12 C.F.R. § 1026.3(b) ......................................................................................... 18

12 C.F.R. § 1026.28(a)(1) .................................................................................... 15

12 C.F.R. § 1026.28(a), Supp. I, pt. 3, cmt. 2 .................................................... 16

44 Fed. Reg. 4454-1 (Feb. 1, 1983) .................................................................... 16

47 Fed. Reg. 16202 (April 15, 1982) .................................................................. 16

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- iv -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

87 Fed. Reg. 76551 (Dec. 15, 2022).............................................................................19

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

1    Plaintiff Small Business Finance Association ("SBFA" or "Plaintiff"),

2    respectfully submits this Memorandum of Law in Opposition to Defendant

3    Clothilde Hewlett's ("Defendant") Motion to Dismiss.

4    **I.     INTRODUCTION**

5    Defendant's motion to dismiss asks the Court to resolve numerous factual

6    issues by accepting as true the factual arguments and conclusions presented in the

7    motion.  That has it backwards.  Defendant does not argue that the allegations in

8    Plaintiff's Complaint are vague or mere conclusions.  To the contrary, Defendant

9    characterizes SBFA's allegations as "lengthy and highly technical."  Put another

10   way, SBFA's Complaint alleges in great factual detail why the Regulations violate

11   the First Amendment and are preempted by the Truth in Lending Act ("TILA").

12   Taking all facts pled in the Complaint as true, SBFA sufficiently alleges that

13   the mandatory disclosures compelled by the Regulations are not factual (and are, in

14   fact, inaccurate and misleading), controversial, and unduly burdensome and

15   unjustified, and thus violate the First Amendment.  Defendant's primary response is

16   that no reasonable person could construe the disclosures as factual statements

17   because they are labeled as "estimates" or contain other qualifying language.

18   Accepting that argument would require the Court to determine, at the motion to

19   dismiss stage, that the allegations in the Complaint are *not* true, and that each of the

20   challenged disclosures is not inaccurate or misleading to the small businesses that

21   receive them.  Indeed, Defendant fails to cite a single case where a court has

22   resolved on a motion to dismiss the inherently factual inquiries that underlie the

23   First Amendment test articulated by the Supreme Court in *Zauderer v. Office of*

24   *Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985) ("*Zauderer*").

25   Courts typically decide those issues on motions for preliminary injunction or

26   summary judgment (or at trial), when they can be presented with a full factual

27   record.  The Complaint states a valid claim for violation of the First Amendment.

28   Defendant's arguments that the Regulations are not preempted by TILA

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- 1 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

likewise fall flat.  Defendant's argument that TILA governs only consumer credit disclosures, not commercial credit disclosures, misconstrues the scope of TILA preemption.  Congress intended TILA's disclosure regime to allow informed comparisons of the cost of credit, and the Complaint expressly alleges that the Regulations defeat that Congressional purpose.  Defendant ignores the Complaint's express allegations that small businesses use *both* consumer and commercial financing products, and will be confused by (among other things) the use of the terms "APR" and "finance charge" in one manner for consumer products, and in a different manner for commercial products.  The Regulations subvert the "full purpose and objectives" of Congress and are thus preempted by TILA.

In sum, the Regulations do not protect vulnerable small business owners.  Instead of allowing them to "assess the cost of esoteric commercial financing products in terms they are likely to understand" (Mot. at 6), the Regulations require providers to give inaccurate disclosures that only result in confusion and misunderstanding.  The Court should deny Defendant's motion.

## II.   **ARGUMENT**

### A.   **Rule 12(b)(6) Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted in the complaint.  *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1137 (C.D. Cal. 2014).  Dismissal under Rule 12(b)(6) is proper only if there is a "lack of a cognizable legal theory" or in "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  "The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party." *ScripsAmerica*, 56 F. Supp. 3d at 1137 (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995)).

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- 2 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

1    To survive a motion to dismiss, a complaint need only contain "factual

2    content that allows the court to draw the reasonable inference that the defendant is

3    liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see*

4    *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations

5    must be enough to raise a right to relief above the speculative level, on the

6    assumption that all the allegations in the complaint are true (even if doubtful in

7    fact)." (citations omitted)); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.

8    2009) (same).  A court may not dismiss a complaint if there is a "reasonably

9    founded hope" that the plaintiff may show a set of facts consistent with the

10   allegations.  *Twombly*, 550 U.S. at 559-60.  Moreover, if a motion to dismiss is

11   granted, a court should normally grant leave to amend unless it determines that the

12   pleading could not possibly be cured by allegations of other facts.  *Cook, Perkiss &*

13   *Liehe v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

14       **B.    The Complaint States A Claim Under The First Amendment**

15       The gravamen of SBFA's first claim is that the Regulations violate the First

16   Amendment by forcing SBFA's members to make inaccurate and misleading

17   disclosures regarding their products.  Government-compelled disclosure of

18   inaccurate or misleading information violates the First Amendment.  *See, e.g.*, *Cal.*

19   *Chamber of Com. v. Council for Edu. & Rsch. on Toxics*, 29 F.4th 468, 483 (9th

20   Cir. 2022) (upholding preliminary injunction against compelled cancer warning).

21       The Ninth Circuit has acknowledged that *Zauderer* provides the appropriate

22   analytical framework for evaluating whether government-compelled speech violates

23   the First Amendment.  *CTIA - The Wireless Ass'n v. City of Berkeley, Cal.,* 928

24   F.3d 832, 849 (9th Cir. 2019) (citing *Am. Bev. Ass'n v. City & County of S.F.*, 916

25   F.3d 749, 756 (9th Cir. 2019) (*en banc*)).  The *Zauderer* test contains three

26   inquiries:  whether the notice is (1) purely factual, (2) noncontroversial, and (3) not

27   unjustified or unduly burdensome.  *Am. Beverage*, 916 F.3d at 756.  The Complaint

28   alleges detailed and specific facts demonstrating that the Regulations' compelled

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- 3 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

disclosures are not purely factual, are controversial, and are unjustified and burdensome. Thus, the Complaint states a valid claim for violation of the First Amendment, and the Court should deny Defendant's motion.

### 1. The Regulations' Compelled Disclosures Are Not Purely Factual

A required disclosure is not "purely factual" under *Zauderer* when there is a dispute about the factual accuracy of the disclosure being compelled. *See, e.g.*, *Kimberly-Clark Corp. v. D.C.*, 286 F. Supp. 3d 128, 140 (D.D.C. 2017) (required disclosures regarding "flushability" of sanitary wipes were not purely factual where there was debate on the meaning of that term); *see also Am. Beverage Ass'n,* 916 F.3d at 761 (Ikuta, J., concurring) (required disclosure that "Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay" was not purely factual as the statement's accuracy was disputed by the manufacturers).

A compelled disclosure of inaccurate or misleading information is not purely factual and thus violates the First Amendment. *See, e.g.*, *Nat'l Ass'n of Wheat Growers v. Becerra*, 468 F. Supp. 3d 1247, 1266 (E.D. Cal. 2020) (injunction granted based on First Amendment claim that compelled warning requirements regarding an alleged "probable carcinogen" were misleading); *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 850-54 (E.D. Cal. 2018) (preliminary injunction granted against compelled cancer warning); *Authentic Beverages Co. v. Tex. Alcoholic Beverages Comm'n*, 835 F. Supp. 2d 227, 244-47 (W.D. Tex. 2011) (finding Texas law that mandated use of inaccurate and misleading labels to be unconstitutional restriction on free speech in violation of the First Amendment).

Even if a compelled disclosure is "literally true but nonetheless misleading and, in that sense, untrue," the compelled disclosure is not purely factual under *Zauderer*. *CTIA-The Wireless Ass'n*, 854 F.3d at 1119; *see also Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 27 (D.C. Cir. 2014) (recognizing the possibility that "some required factual disclosures could be so one-sided or incomplete that

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

they would not qualify as 'factual and uncontroversial'") (citations omitted); *cf.* Federal Trade Commission, *FTC Report: Many Consumers Believe "Up To" Claims Promise Maximum Results* (June 29, 2012) (releasing research and concluding advertisers who claim savings of "up to" a certain amount must be able to substantiate that purchasers "are likely to achieve the maximum results promised under normal circumstances"), available at https://www.ftc.gov/news-events/news/press-releases/2012/06/ftc-report-many-consumers-believe-claims-promise-maximum-results (last visited Mar. 6, 2023).

Defendant argues that the disclosures compelled by the Regulations are just like the notice that the city of Berkeley required retailers to provide prospective cell phone purchasers in *CTIA*.  But in that case, the City's required disclosure accurately characterized existing federal guidelines on radio frequency exposure. *CTIA,* 928 F.3d at 846-47 ("The text of the compelled disclosure is literally true."). Here, in contrast, the Regulations compel disclosures of inaccurate information. *See Nat'l Ass'n of Manufacturers v. S.E.C.*, 800 F.3d 518, 530 (D.C. Cir. 2015) (disagreeing companies could only be compelled to state that their products are "environmentally sustainable" or "fair trade" if "the government provided 'factual' definitions" of those slogans).

The allegations in the Complaint make it clear that the Regulations compel SBFA's members to disclose "inaccurate information that misstates the costs of financing."  (Compl., ¶ 2)  The fundamental problem with the Regulations is that they require disclosures that were designed for certain closed-end loans to be used for fundamentally different products (such as sales-based financing and open-end credit), resulting in false and misleading statements regarding the very nature of those products as well as their actual cost.  (*See id.*, ¶ 27 ["These are materially false and misleading statements as they undercut the value proposition of sales-based financing – there is no term, no rate, and no absolute obligation to pay a sum certain because the transaction *is not a loan*."]; ¶ 35 ["Making open-end disclosures

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- 5 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

as if the product is closed-end is simply misleading and hides the value proposition of open-end products."]).  The Complaint contains detailed factual allegations that explain exactly why the compelled disclosures are inaccurate and misleading.

### a.   Compelled Inaccurate Disclosures Regarding Sales-Based Financing Transactions

The Complaint alleges that the Regulations compel numerous inaccurate and misleading disclosures regarding sales-based financing transactions, which make it appear that sales-based financing transactions operate like traditional loans. (Compl., ¶¶ 17-32)  For example, the Regulations require disclosure of an estimated payment and estimated term when there is no fixed payment obligation and no fixed term in a sales-based financing transaction – in fact, there is no payment obligation at all because these are purchase and sale transactions.  (*Id.*, ¶ 21)  The manner in which the Regulations require providers to calculate the estimated payment and term also result in the disclosure of false and misleading figures that may actually conflict with the provider's internal underwriting methodology and the initial remittance amount specified in the contract itself.  (*Id.*, ¶ 22)  And, because the Regulations' calculation of estimated APR rests on the faulty assumptions underlying the "Estimated Payment" and "Estimated Term," the Estimated APR could also be inaccurate and deceptive.  (*Id.*, ¶ 23)

Requiring providers to use terms that are contrary to the nature and structure of sales-based financing transactions also results in inaccurate disclosures.  For example, the Regulations require providers to state that recipients "owe" money, when that is not the case, since if a small business does not generate the receivables the provider purchased, the business does not owe anything to the provider.  (*Id.*, ¶ 28)  Similarly, the Regulations' required disclosures regarding a recipient's supposed "prepayment rights" misstate the true nature of a sales-based financing transaction, including by suggesting that interest is charged on these transactions when it is not.  (*Id.*, ¶¶ 26-27)  The Complaint expands on all of these issues and

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- 6 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

explains in detail why the Regulations' compelled disclosures require SBFA's members to describe their products in ways that fundamentally misrepresent the nature of the financing transactions.  It also alleges that, in addition to compelling false speech by requiring inaccurate disclosures, the Regulations improperly restrict speech by prohibiting providers from modifying the disclosures to make them accurate, or providing additional information to eliminate confusion.  (*Id.*, ¶ 31)  These allegations, spanning ten pages of the Complaint, are more than sufficient to state a First Amendment claim.

### b.   Compelled Inaccurate Disclosures Regarding Open-End Financing Transactions

The Regulations also compel inaccurate and misleading disclosures regarding open-end financing.  As alleged in detail in the Complaint, the Regulations require providers to disclose the supposed "costs" of open-end financing transactions in a manner that more closely resembles closed-end financing and thus fundamentally misstates the nature of the open-end transactions.  (Compl., ¶¶ 35-38)

For example, Sections 911(a)(2) and 940(c) of the Regulations require providers of open-end credit to assume that the recipient will make an initial draw of their full approved credit limit, that the recipient will choose to make only minimum payments, and that the recipient will not make any subsequent draws. (*Id.*, ¶ 35)  These assumptions bear no relationship to how a typical business would use an open-end line of credit.  These erroneous assumptions provide the inputs for calculating the APR on the transaction.  Because they premise the APR calculation on faulty assumptions, the Regulations require providers to disclose the highest possible cost of open-end financing, not the actual cost the business is likely to incur.  (*Id.*, ¶ 36)

### c.   Labeling The Disclosures As "Estimates" Does Not Eliminate Their Inaccuracy Or Deceptiveness

To be sure, the Complaint's allegations regarding sales-based financing and

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- 7 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

open-end credit transactions are "lengthy and highly technical," as Defendant points out more than once. (Mtn. at 5:11-13, 9:15-17) That's another way of saying the allegations are specific and detailed, not mere conclusions. On a motion to dismiss, the Court must accept these "lengthy and technical" allegations as true and cannot resolve them. Yet that is exactly what Defendant asks this Court to do, arguing, for example, that certain disclosures "could only be understood as estimates" (*Id.* at 14), or that certain terms are "commonly understood" (*Id*. at 12) in certain ways (which is ironic given Defendant's contention that these are "esoteric financial products"), or that disclosing certain assumptions "does not render the original estimates misleading." (*Id.* at 10) None of the cases cited in the motion applying the *Zauderer* test involved a decision on the pleadings; they all involved rulings on motions for preliminary injunction or summary judgment, where the courts had a more detailed factual record that they could evaluate and weigh. This is simply not the time for the Court to decide which side is correct on the facts.

Defendant's primary argument is that the Regulations' compelled disclosures cannot be misleading because they are "estimates" based on "assumptions" that are spelled out elsewhere. For example, Defendant argues that the disclosures about open-end credit are qualified to state that "actual costs may vary," and the figures disclosed as the APR "could only be understood as estimates." These arguments fail for several reasons.

First, Defendant's argument about estimates misconstrues the allegations in the Complaint. The definition of estimate is a "a rough or approximate calculation." (https://www.merriam-webster.com/dictionary/estimate.) SBFA is not claiming that the Regulations' compelled disclosures are false and inaccurate because they are slightly off; the claim is not merely that the disclosures force SBFA's members to disclose an APR of 20.5% when the members believe the actual APR is only 20.4%. The allegation is that the Regulations force SBFA's members to inaccurately describe the fundamental nature of the products they are

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

offering and to materially mischaracterize their costs.  That is harmful to SBFA's members in that it may discourage potential customers from doing business with them because the Regulations force providers to omit or mischaracterize relevant features of the products.  It is also contrary to the stated purpose of the Regulations, which is to provide small businesses with *accurate* information to allow them to evaluate the cost of various types of credit options.

Second, Defendant cites no authority to support her argument that qualifying language can erase any misleading taint that the disclosures may create.  In effect, Defendant is asking the Court to resolve factual disputes regarding how a recipient of the disclosures would interpret them.  That is not the Court's function on a motion to dismiss.  *See, e.g.*, *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (holding that under the Reasonable Consumer Test, it is a "rare situation" in which granting a motion to dismiss is appropriate because "it raises questions of fact"); *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer.") (citations and quotations omitted).

Merely labeling something as an "estimate" or an "assumption" does not cure the misleading nature of the disclosure.  *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (finding that reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box); *Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 WL 1176535, at *13 (N.D. Cal. Mar. 29, 2021) (holding that if defendants' offers related to travel insurance are misleading to begin with, "the problem is not cured by a disclosure somewhere other than the offer"); *Hilsley v. Gen. Mills, Inc.*, No. 3:18-cv-00395-L-BLM, 2021 WL 2290782, at *5 (S.D. Cal. Jun. 4, 2021) (rejecting proposed settlement that

401996316.13

- 9 -

would change product packaging by displaying an asterisk immediately following "No Artificial Flavors" claim that directs the consumer to an expanded statement); *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) ("[A]t the pleading stage, the Court cannot conclude that a reasonable consumer should be expected to look beyond 'made with real fruit' in order to discover the truth in the small print."); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1092 (N.D. Cal. 2017) ("[California consumer protection] laws prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'").

A common thread in these cases is that courts should not decide on the pleadings whether qualifying language or disclaimers can cure an inaccurate or misleading statement regarding a product. As one example of how qualifying language can be insufficient, the Regulations require the finance charge for open-end credit products to be determined based on the assumptions that the business will draw down the entire line of credit, make no other draws, and make only minimum payments – basically converting the product into a closed-end loan. Anyone with a credit card (a type of open-end credit) knows that if you draw the entire credit limit on Day 1 and make only minimum payments, you will pay tons of interest, because the amount of interest paid depends on the balance carried. This is what the Regulations require providers to assume in calculating and disclosing the finance charge for open-end products – that each recipient of open-end financing will behave this way and run up the highest possible finance charge. Defendant's suggestion that companies looking for financing won't be scared off by the enormous and highly unlikely finance charge the Regulations force providers to disclose, as it is "only an estimate" which "may vary," is at best something to be resolved on a full record, not at the pleading stage.

Defendant makes similar arguments with respect to the allegations using the words "owes" and "fees" in paragraphs 28 and 29 of the Complaint. But how

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- 10 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

recipients understand those words in the context of the disclosures being provided cannot be resolved at the pleading stage. *Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-2048-MMA (MDD), 2022 WL 2441303, at *13 (S.D. Cal. Jul. 5, 2022) ("In both California and New York, whether a representation would mislead the reasonable consumer is a factual inquiry often inappropriate for Rule 12(b)(6) dismissal."); *Varcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 280 (S.D.N.Y. 2021) ("At the motion to dismiss stage, 'the Court may not resolve questions regarding 'the background knowledge, experience, and understanding of reasonable consumers' as a matter of law.'").

The Regulations compound these problems by prohibiting providers from making additional disclosures that may clarify the inaccuracies and misconceptions created by the Regulations' mandated disclosures. (Compl., ¶¶ 2, 31, 38-39, 63) Defendant argues that providers could simply give recipients information apart from the compelled disclosures, but this is permitted only in limited circumstances not sufficient to address the issue.

The Complaint's detailed allegations show that the Regulations' compelled disclosures are not factual. Thus, the Complaint adequately alleges that the Regulations do not satisfy the first *Zauderer* prong.[1]

### 2. The Regulations' Compelled Disclosures Are Controversial

Defendant next argues that because the Regulations "do not touch on an area of heated political controversy like abortion[,] or require position statements regarding matters of legitimate scientific debate," they cannot be found to be controversial under *Zauderer*. The law is not so narrow.

There is no requirement that an issue relate to a "heated political

---

[1] Defendant notes that, starting January 1, 2024, providers will no longer be required to disclose the cost of financing as an annualized rate. (Mtn. n.1, citing Cal. Fin. Code § 22802.) That assumes that the Legislature will not choose to extend the requirement, and of course it does not erase the taint of the First Amendment violation happening *now*.

401996316.13

controversy" or a "scientific debate" in order to qualify as controversial under *Zauderer*. Instead, "[a] controversy, the dictionaries tell us, is a dispute, especially a public one." *National Ass'n of Manufacturers v. SEC*, 800 F.3d 518, 529 (D.C. Cir. 2015). A compelled disclosure can be "controversial" when it expresses "a matter[ ] of opinion" (*Zauderer*, 471 U.S. at 651), and Courts have recognized that issues may be controversial within the meaning of *Zauderer* in a variety of contexts. *See Kimberly-Clark*, 286 F. Supp. 3d at 141 (noting that "terms like 'environmentally sustainable' or 'fair trade' may leap out as more controversial to the layperson[, but a]s it turns out, [] the term 'flushable' carries its own baggage."); *California Chamber of Com. v. Becerra*, 529 F. Supp. 3d 1099, 1120 (E.D. Cal. 2021) (holding "[a] controversy may prevent *Zauderer* from applying even if it is not political"), *aff'd sub nom. California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022).

The Regulations clearly involve a public dispute, as Defendant's motion confirms. This is the first time that California has imposed disclosure requirements on commercial financing, and the process of enacting the underlying legislation and implementing Regulations involved "years of work and the input of many stakeholders." (Mtn. at 1) As Defendant notes, SBFA opposed the initial enactment of SB 1235 when the Legislature was considering the law. Once enacted, the Legislature left it to the Department of Financial Protection and Innovation ("DFPI") to promulgate the Regulations, which it ultimately did "after years of soliciting comments, holding public hearings, and issuing revised proposals." (*Id*. at 3) The controversy did not end when the Regulations were enacted, as reflected by the CFPB's involvement in the issue. These facts clearly establish that the Regulations and their compelled disclosures are controversial.

In addition, the Complaint alleges that the Regulations are controversial because they require SBFA's members to mischaracterize the financing they provide using language dictated by the government (Compl., ¶ 61) and because they

prohibit speech that SBFA's members would use to clarify or correct false or misleading information. (*Id.*, ¶ 63)

In sum, the allegations in the Complaint demonstrate that the Regulations relate to a controversial issue under *Zauderer* and support SBFA's First Amendment challenge.

### 3. The Disclosures Are Unduly Burdensome And Unjustified

The Complaint is replete with specific allegations that the Regulations are unjustified and unduly burdensome beyond the fact that they impose disclosure obligations that are neither factual nor uncontroversial. Thus, this is yet another issue that cannot be resolved on the pleadings. In fact, Defendant has the burden of proving that the disclosures are neither unjustified nor unduly burdensome. *Ibanez v. Fla. Dep't of Bus. & Prof'l Reg.*, 512 U.S. 136, 146 (1994); *Am. Beverage*, 916 F.3d at 756 ("Defendant has the burden of proving that the warning is neither unjustified nor unduly burdensome.").

First, the Regulations present SBFA's members with a Hobson's choice: risk significant civil fines, penalties, and injunctions by complying with the Regulations, or immediately undertake expensive steps to comply with a statute that violates the First Amendment. (Compl., ¶ 40) Defendant has broad powers to seek criminal and civil sanctions for alleged violations of the Regulations. *See* Cal. Fin. Code §§ 22713, 22780, 22805. Failure to comply with the Regulations will subject SBFA's members to Defendant's extensive enforcement powers, which are specified in the Complaint. SBFA's members also may face criminal liability for failing to comply with the Regulations. (*Id.*, ¶¶ 16, 40) These risks are not abstract. Defendant has indicated the intent to enforce the Regulations, including their APR and finance charge disclosure requirements, thereby subjecting SBFA members to actions seeking criminal and civil remedies if they do not comply with the Regulations' requirements. (*Id.*, ¶ 67) *Cf. Loan Payment Admin. LLC v. Hubanks*, 821 Fed. Appx. 687 (9th Cir. 2020) (holding the district court correctly

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- 13 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

found the required disclosures were not unduly burdensome because compliance would require relatively *brief* disclosures in solicitation letters).

<u>Second</u>, the compelled disclosure of false and inaccurate information relating to the financial products at issue would harm SBFA's members' competitive position in the marketplace.  The purpose of the disclosure requirements is to allow businesses seeking financing to compare "apples to apples" in evaluating the cost of different financing options.  The result of the regulations is that businesses seeking to obtain financing will be comparing apples to oranges painted red to look like apples.  (Compl., ¶ 41)  The compelled disclosures required by the Regulations would make it appear that the products of SBFA's members are more expensive or otherwise less valuable than they actually are, so businesses seeking financing would be discouraged from seeking financing from SBFA's members.  (*Id.*)

<u>Third</u>, the Regulations are burdensome and unjustified because their compelled disclosures would also adversely impact commercial credit markets.  The stated purpose of the Regulations is to provide small businesses with accurate information to evaluate various financing options and to help them understand these "esoteric commercial financing products."  (Mtn. at 6)  Yet the result is the exact opposite.  Small businesses that receive inaccurate disclosures may be discouraged from seeking those financing options or may choose options that are more expensive or otherwise less advantageous to them.  (Compl., ¶ 42)[2]

<u>Finally</u>, the Regulations are unjustified because the public interest is affirmatively disserved by a government act requiring businesses to make confusing and misleading disclosures and preventing these businesses from clarifying these disclosures with their own speech.  Accordingly, the mandated disclosures are not reasonably related to California's interest in preventing consumer deception.  *See*

---

[2] Defendant claims that the Regulations allow small businesses to compare non-traditional products to bank loans, but banks are exempt from the Regulations and not required to make disclosures on commercial loans under TILA either.

401996316.13

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

*Video Software Dealers Ass'n v. Schwarzenegger,* 556 F.3d 950, 967 (9th Cir. 2009) ("[T]he State has no legitimate reason to force retailers to affix false information on their products").

In sum, the Complaint contains detailed factual allegations that satisfy all three prongs of the *Zauderer* test. There is simply no basis on this record for the Court to resolve the numerous factual issues raised by the Complaint and Defendant's motion. The Court need go no further – it should deny the motion to dismiss, as the Complaint sufficiently alleges a First Amendment claim.

**C.     The Complaint Adequately Alleges That The Regulations Are Preempted by TILA**

The motion also should be denied with respect to the TILA preemption claim, which the Complaint adequately alleges. Federal law may preempt state law in three distinct ways – through express, field, or conflict preemption. *Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002). Here, SBFA's Second Claim for Relief is based on both express preemption and conflict preemption. (Compl., ¶¶ 45-47) TILA expressly preempts state law when it is "inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. § 1610(a)(1). Regulation Z further explains that a "State law is contradictory if it requires the use of the same term to represent a different amount or a different meaning than the Federal law, or if it requires the use of a term different from that required in the Federal law to describe the same item." 12 C.F.R. § 1026.28(a)(1). The Official Interpretations to Regulation Z ("Commentary") also explain that a state law is inconsistent with TILA if it contradicts TILA. State laws that contradict TILA include:

    i.     A state law that requires use of the term "finance charge" but defines the term to include fees that the Federal law excludes.

    ii.    A state law that requires a label such as a nominal annual interest rate to be used for what the Federal law calls the "annual percentage rate."

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

401996316.13

- 15 -

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

12 C.F.R. § 1026.28(a), Supp. I, pt. 3, cmt. 2.  Notably, the Commentary refers to "a state law" broadly, without limitation to certain types of state laws.  The language is intentionally broad, to protect the value of the key terms of art that TILA created:  "APR" and "finance charge."  Accordingly, state laws that impose disclosures using the terms "finance charge" or "APR" will face more scrutiny in a preemption analysis because these terms have such significance under TILA.  As the Federal Reserve Board stated when concluding a state law requiring APR and finance charge disclosures was preempted:

> finance charge or annual percentage rate disclosures . . . will be reviewed more strictly; since these disclosures are particularly significant, *any contradiction of the corresponding federal disclosure would interfere with the intent of the federal scheme.*

47 Fed. Reg. 16202 (April 15, 1982) (emphasis added); *see also* 44 Fed. Reg. 4454-1 at 4454 (Feb. 1, 1983) (same).

Independent of TILA's express preemption provision, SBFA also claims conflict preemption, which arises, among other circumstances, "when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Bank of Am.*, 309 F.3d at 558 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941));  *United States v. City of Pittsburg, Cal.*, 661 F.2d 783, 785 (9th Cir. 1981); *see also Rust v. Johnson,* 597 F.2d 174, 179 (9th Cir.), *cert. denied,* 444 U.S. 964 (1979) (local government cannot override federal interest even though local government was engaged in valid state function).  Here, the principal objective behind TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and *avoid the uninformed use of credit*."  15 U.S.C. § 1601(a) (emphasis added).

### 1.   The Regulations Conflict With And Are Preempted By TILA

As Defendant concedes, the Complaint alleges that the "Regulations mandate

disclosure of 'APR' and 'finance charge,' but define and calculate those terms differently than is done under TILA," and are contradictory with respect to a number of other requirements.  (Compl., ¶¶ 52-53, 55-56)  Defendant nonetheless argues that the Regulations are not inconsistent with TILA because the Regulations apply only to commercial transactions, while TILA applies only to consumer transactions.  However, this theory does not defeat preemption.

First, Defendant ignores important allegations in the Complaint concerning the types of financing used by small businesses, which often are sole proprietors. In particular, the Complaint alleges that:

> [S]mall business owners often finance their businesses through a combination of commercial finance products and consumer finance products available to them individually (*e.g.,* consumer loans, home equity loans, credit cards).  Consequently, when such business owners shop for financing, they routinely compare products that are subject to TILA with products that are not subject to TILA.  A state law mandating disclosure of two essential TILA-defined terms for non-TILA products, but defining or calculating those terms differently from TILA, will create significant confusion among consumers considering TILA products.  This inconsistency will result in misleading disclosures of credit choices, thwarting Congress' primary objective in enacting TILA.

(*Id.*, ¶ 57)[3]

The fact that small businesses consider and use both consumer and commercial financing is critical to the preemption issue, and completely overlooked by Defendant.  When small business owners evaluate consumer products governed by TILA, they will see disclosures of APR and finance charge consistent with

---

[3] The Complaint's allegations on this point must be taken as true on a motion to dismiss, but it is worth noting that they are supported by substantial evidence. According to a recent survey, for example, 46% of small business owners use personal credit cards to fund their business expenses.  *See* Marco Carbajo, *10 Stats That Explain Why Business Credit is Important for Small Business*, U.S. Small Business Administration, Mar. 9, 2017, https://www.sba.gov/blog/10-stats-explain-why-business-credit-important-small-business (last visited Mar. 3, 2023).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

TILA's requirements.  But when they evaluate commercial products governed by the Regulations, they will see disclosures of "APR" and "finance charge" calculated in a completely different manner because the Regulations require the disclosures to be calculated differently.  For this reason, a consumer credit card with the same credit limit, fees, and interest rate as a commercial open-end product is going to disclose a much lower APR and finance charge than the commercial product because of the inaccurate assumptions and different rules required by the Regulations.  This is a far cry from the "apples to apples" comparisons envisioned by the Regulations, and it contradicts TILA's purpose of ensuring meaningful and consistent disclosure of credit terms, and facilitating the informed use of credit.  It therefore meets the inconsistency requirement and requires a finding of preemption.

Second, it is fundamental that courts are to construe statutes in a manner that avoids absurd results.  *See, e.g., Joffe v. Google, Inc.*, 746 F.3d 920, 930 (9th Cir. 2013).  Defendant's assertion that TILA preemption only applies to products that are governed by TILA would lead to such absurd results.  For example, 12 C.F.R. § 1026.3(b) expressly exempts all consumer loans from Regulation Z if they are over a certain dollar threshold and are not mortgage loans or student loans.  So, an unsecured consumer loan for $66,500 is not subject to TILA, while an unsecured consumer loan for $100 less ($66,400) is subject to TILA.  The same issue exists for auto loans and various other types of consumer loans.  If the Regulations are not preempted because commercial finance products are not subject to TILA, then states would be free to pass their own APR and finance charge definitions and calculations for all classes of exempt transactions, *including various consumer transactions exempt from TILA and Regulation Z*.  Thus, states would be free to require one type of "APR" for a $66,500 consumer credit transaction, while TILA would preempt that law with respect to the same type of transaction in the amount of $66,400.  This is precisely the type of absurd result that is to be avoided.  The

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

motion should be denied.[4]

### 2. Informal And Non-Final Guidance By The CFPB Should Be Accorded No Deference – *Chevron* Or Otherwise

Defendant next claims that the Consumer Financial Protection Bureau (CFPB) has preliminarily determined that a different commercial credit disclosure law (New York's) is not preempted by TILA and as such, a similar analysis should apply to the Regulations.  However, as Defendant concedes, the CFPB is still in the preliminary stages of developing its guidance, and has not yet issued a final agency determination.  *See* Intent to Make Preemption Determination under the Truth in Lending Act (Regulation Z), 87 Fed. Reg. 76551 (Dec. 15, 2022) (providing notice and requesting comments).  This type of informal guidance should not be accorded any deference.  *Ass'n of Flight Attendants – CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 717-18 (D.D.C. 2015).  Permitting an agency to use its (preliminary) guidance to make binding or even persuasive determinations on legal norms – particularly on jurisdictional matters like preemption – subverts the underlying purpose of notice-and-comment.  *Make The Rd. N.Y. v. Wolf*, 962 F.3d 612, 634 (D.C. Cir. 2020) ("[A] central purpose of notice-and-comment rulemaking is to subject agency decisionmaking to public input and to obligate the agency to consider and respond to the material comments and concerns that are voiced.").  In effect, the CFPB's preliminary determination represents nothing more than a preliminary view subject

---

[4] It is worth noting that a finding of preemption here would not prevent California from requiring disclosures of the cost of commercial credit, but rather only from doing so using TILA terminology in a different way than TILA prescribes. Virginia and Utah, for example, passed commercial disclosure laws in 2022 that have no TILA preemption issues because they either require use of the terms "APR" and "finance charge" in the same manner as called for by TILA, or use different terms.  *See* Va. Stat. § 6.2-2228; Utah Code Ann. § 7-27-101, *et seq.*
401996316.13

1   to complete reversal.[5]

2       But even if the CFPB had issued a final determination, it still should not be

3   afforded *Chevron* deference.  The CFPB's position, at best, would be considered

4   interpretive guidance that did not go through full notice-and-comment rulemaking.

5   As such, it does not warrant the deference afforded to other types of rulemaking

6   under *Chevron*.  *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)

7   ("Interpretations such as those in opinion letters – like interpretations contained in

8   policy statements, agency manuals, and enforcement guidelines, all of which lack

9   the force of law – do not warrant *Chevron*-style deference.").

10  **III.**   **CONCLUSION**

11       The Court should deny Defendant's motion to dismiss and allow this case to

12   proceed to discovery.

13   Dated:      March 6, 2023          Respectfully submitted,

14                            MANATT, PHELPS & PHILLIPS, LLP

15

16                           By: */s/ Scott M. Pearson*

17                               Scott M. Pearson
                                    Brad W. Seiling

18                               *Attorneys for Plaintiff*
                               SMALL BUSINESS FINANCE

19                             ASSOCIATION

20

21

22

23

24

25

26

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

---

27  [5] While there is no actual guidance to be deferred to at this point, Plaintiff reserves
28  the right to argue that any final guidance is not entitled to *Chevron* deference
    because TILA is unambiguous and the CFPB's interpretation is unreasonable.

401996316.13