ROB BONTA  
Attorney General of California  
CRAIG D. RUST (SBN: 273774)  
Supervising Deputy Attorney General  
RACHEL J. YOO (SBN: 293598)  
Deputy Attorney General  
  1300 I Street  
  Sacramento, CA 95814  
  Telephone: (916) 210-7359  
  E-mail: Craig.Rust@doj.ca.gov  
        Rachel.Yoo@doj.ca.gov  
*Attorneys for Defendant*  
*Clothilde Hewlett, solely in her official capacity as*  
*Commissioner of the California Department of*  
*Financial Protection and Innovation*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **SMALL BUSINESS FINANCE ASSOCIATION,**<br><br>                        Plaintiff,<br><br>v.<br><br>**CLOTHILDE HEWLETT, solely in her official capacity as commissioner of the California Department of Financial Protection and Innovation,**<br><br>                        Defendant. | 22-cv-08775-RGK-PLA<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT CLOTHILDE HEWLETT**<br><br>Date: March 27, 2023<br>Time: 9:00 a.m.<br>Courtroom: 850<br>Judge: Hon. R. Gary Klausner<br>Trial Date: Not set<br>Action Filed: December 2, 2022 |

# TABLE OF CONTENTS

                                                                                                                         **Page**

I. Introduction ....................................................................................................... 1
II. Argument ........................................................................................................... 1
     A. The Regulations Do Not Violate the First Amendment. ....................... 1
          1. The Opposition fails to respond to the numerous ways the Complaint misreads the Regulations. ........................................... 2
          2. The Regulations are factual and not misleading because the required disclosure of assumptions and methodology is clear and transparent. ............................................................. 3
          3. The *Zauderer* inquiry should be resolved by the Court. ............. 5
          4. The disclosures are not controversial. ......................................... 8
          5. The disclosures are reasonably related to California's interest in protecting recipients of financing products and are not unduly burdensome or unjustified. ................................. 8
     B. The Regulations Are Not Preempted by TILA. .................................... 9
III. Conclusion ....................................................................................................... 10

# TABLE OF AUTHORITIES

Page

**CASES**

*1-800-411-Pain Referral Serv., LLC v. Otto*
    744 F.3d 1045 (8th Cir. 2014) ................................................................................. 6

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*
    916 F.3d 749 (9th Cir. 2019) (en banc) ............................................................... 1, 9

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................................................ 2

*BNSF Ry. Co. v. California Dep't of Tax & Fee Admin.*
    904 F.3d 755 (9th Cir. 2018) ................................................................................ 10

*California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*
    29 F.4th 468 (9th Cir. 2022) ................................................................................... 8

*Connecticut Bar Ass'n v. United States*
    620 F.3d 81 (2d Cir. 2010) .................................................................................. 2, 5

*CTIA - The Wireless Ass'n v. City of Berkeley California*
    928 F.3d 832 (9th Cir. 2019) ............................................................................. 6, 8

*CTIA-The Wireless Association v. City of Berkeley, California*
    139 F. Supp. 3d 1048 (N.D. Cal. 2015) .................................................................. 8

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*
    728 F. Supp. 2d 1170 (D.N.M. 2010) ..................................................................... 6

*Hersh v. U.S. ex rel. Mukasey*
    553 F.3d 743 (5th Cir. 2008) .................................................................................. 6

*Libertarian Party of Los Angeles Cnty. v. Bowen*
    709 F.3d 867 (9th Cir. 2013) .................................................................................. 9

*Loan Payment Admin. LLC v. Hubanks*
    821 F. App'x 687 (9th Cir. 2020) ........................................................................... 5

# TABLE OF AUTHORITIES
### (continued)

Page

*Milavetz, Gallop & Milavetz, P.A. v. United States*
   559 U.S. 229 (2010) ........................................................................................ 7

*Nationwide Biweekly Admin., Inc. v. Owen*
   873 F.3d 716 (9th Cir. 2017) ........................................................................ 5, 9

*New York State Rest. Ass'n v. New York City Bd. of Health*
   556 F.3d 114 (2d Cir. 2009) ........................................................................... 4

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*
   475 U.S. 1 (1986) ............................................................................................ 7

*Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*
   496 U.S. 91 (1990) .......................................................................................... 6

*Pharm. Care Mgmt. Ass'n v. Rowe*
   429 F.3d 294 (1st Cir. 2005) ........................................................................... 7

*Poughkeepsie Supermarket Corp. v. Dutchess Cnty., N.Y.*
   648 F. App'x 156 (2d Cir. 2016) .................................................................... 6

*Puerto Rico v. Franklin California Tax-Free Tr.*
   579 U.S. 115 (2016) ..................................................................................... 10

*Reid v. Johnson & Johnson*
   780 F.3d 952 (9th Cir. 2015) .......................................................................... 6

*Zauderer v. Office of Disciplinary Counsel*
   471 U.S. 626 (1985) ............................................................................. *passim*

**STATUTES**

15 U.S.C.
   § 1601(a) .......................................................................................................... 9
   § 1603(1) .......................................................................................................... 9
   § 1610(2) .......................................................................................................... 9
   § 1610(a)(1) ..................................................................................................... 9

California Financial Code
   § 22802(a) ....................................................................................................... 9
   § 22803(a) ....................................................................................................... 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   First Amendment ................................................................................*passim*

**COURT RULES**

Federal Rules of Civil Procedure
   Rule 12(b)(6) ............................................................................................... 5

**REGULATIONS**

10 C.C.R.
   § 901(8) ....................................................................................................... 9
   § 901(a)(7) .................................................................................................. 5
   § 901(a)(8) .................................................................................................. 5
   § 901(a)(9) ............................................................................................... 2, 5
   § 914(a)(3)(D) ............................................................................................ 2
   § 914(a)(4)(C) ............................................................................................ 2
   § 914(a)(10) ................................................................................................ 2
   § 931(a)(3) .................................................................................................. 2

12 C.F.R.
   § 1026.1(iv) ................................................................................................ 9
   § 1026.1(c)(1)(i) ......................................................................................... 9
   § 1026.17(c)(2)(i) ....................................................................................... 4
   § 1026.18(f) ................................................................................................ 4

21 C.F.R.
   § 202.1 ........................................................................................................ 4

Truth in Lending Act (TILA) ...................................................................... 1, 4, 9, 10

## I. INTRODUCTION

The Regulations promulgated by the Department require commercial financing providers to disclose the estimated costs of their products using a transparent set of assumptions and methods that are clearly communicated to the purchasers of those products. For that reason, the Regulations satisfy rational basis scrutiny under *Zauderer*, which is an issue the Ninth Circuit has held can be decided in the context of a motion to dismiss.

The Association's Opposition (Dkt. No. 19) ignores both the myriad of ways its Complaint misreads the Regulations' requirements and the impact that providing recipients with all the information regarding how the disclosed estimates were calculated has on the First Amendment analysis.

The Association's true problem is with the clearly communicated assumptions that go into the cost calculations. But the selection of those assumptions was made by the Department after a years-long process during which the Department listened to and carefully balanced the many different competing demands of various stakeholders, including the Association. To the extent the Association believes the Department struck the wrong balance, that is an issue for the Association to take up with the state legislature. The Association's dissatisfaction with the selection of the disclosure methodology does not mean that its constitutional rights have been violated. And finally, the Regulations are not preempted by the federal Truth in Lending Act (TILA), because Congress could not have been clearer in enacting TILA that the statute does not apply to commercial financing transactions.

For all these reasons, the Court should grant the Department's Motion to Dismiss (Dkt. No. 11).

## II. ARGUMENT

### A. The Regulations Do Not Violate the First Amendment.

The *Zauderer* test "contains three inquiries: whether the notice is (1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." *Am.*

1

*Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) (en banc). These elements are satisfied here (Mot. 6–16), and the Opposition's arguments to the contrary fail for the reasons set forth below.

### 1. The Opposition fails to respond to the numerous ways the Complaint misreads the Regulations.

The Motion details the numerous ways in which the Complaint inaccurately interprets and describes the Regulations' disclosure requirements. (Mot. 9–14.) The Opposition either ignores most these arguments or reiterates the Complaint's demonstrably false interpretations of the Regulations. (Opp'n 6–7.) The Court is not required to accept the Complaint's erroneous legal assertions as true in deciding the Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For example, the Complaint alleges that providers are required to use a recipient's historical monthly sales averages to calculate estimated payment terms and estimated APR, even where the provider believes it has a superior methodology. (Compl. ¶¶ 22–23.) Not so—the Regulations expressly allow providers to use "the best information reasonably available" to them. 10 C.C.R. § 931(a)(3); Mot. 10. Similarly, the Opposition ignores the fact that the Regulations do not require statements that recipients may prepay balances and that recipients must be informed that no interest is being charged. 10 C.C.R. § 914(a)(10), (a)(3)(D); Mot. 11–12; Opp'n 6–7.

The Opposition also reiterates the Complaint's contention that a provider is required to say a recipient "owes" money, even though the Regulations are clear that providers do not have to include this language. 10 C.C.R. § 914(a)(4)(C); Mot. 12. The same goes for the Association's contention that providers are unable to provide additional information to their customers about their products. (Opp'n 7.) To the contrary, the Regulations permit short explanations as part of the disclosure forms, 10 C.C.R. § 901(a)(9), and do not restrict what information the providers give recipients outside those forms. *See Connecticut Bar Ass'n v. United States*,

620 F.3d 81, 98 (2d Cir. 2010) (holding that the ability of a commercial speaker to provide "*more* information than is contained in the mandated disclosures to ensure accurately informed choice" was a factor in establishing the disclosures were not misleading); Mot. 13.

The Association's failure to address these arguments is a tacit admission that the Complaint fails to state a claim that these provisions of the Regulations violate the First Amendment.

### 2. The Regulations are factual and not misleading because the required disclosure of assumptions and methodology is clear and transparent.

The Opposition also asserts that the disclosure of the assumptions and methodology underlying the disclosure's estimated financing costs is insufficient to cure the allegedly misleading nature of the disclosures. (Opp'n 7–11.) The Association is wrong.

As an initial matter, it is worth clarifying that despite the Association's repeated assertions that the disclosures are "false and inaccurate," (e.g., Opp'n 8), the estimates are true and accurate computations given the assumptions and methodologies set forth in the Regulations. The Association's real concern is that it thinks those assumptions and methodologies overstate the typical cost of its members' products. (Opp'n 7.) To put it another way, the Regulations essentially require disclosures that say: "If X, then Y." The Complaint does not argue that this conditional relationship is a false statement. Instead, the Association asserts that the condition precedent of X is so unlikely that compelling its members to make this accurate statement is so misleading that it violates the First Amendment. (*E.g.*, Opp'n 10.)

This misstates the applicable First Amendment standard. To begin with, "[b]ecause the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides," the "constitutionally protected interest in *not* providing any particular

3

factual information in . . . advertising is minimal." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985). In other words, the more information the public has, the better. Even if a stated event is unlikely to occur—like the assumption challenged by the Association that open end credit recipients will make a full initial draw of their line of credit and make minimum payments thereafter—recipients have an interest in knowing what impact even unlikely events might have on the cost of their financing. *Cf.* 21 C.F.R. § 202.1 (requiring disclosure of possible side effects in prescription drug advertising). This is especially true where the disclosure unambiguously explains what sequence of events need to occur to trigger that level of financing cost. Certainly, the Complaint does not allege that scenario regarding a recipient's use of open end credit is impossible. Financing providers have no First Amendment right to hide the consequences of such use from their customers. *See id.* at 651 n.14 (a commercial speaker does not have a fundamental right "not to divulge accurate information regarding his services"); *New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 134 (2d Cir. 2009) (noting that "the First Amendment does not bar the City from compelling . . . 'under-inclusive' factual disclosures" (quoting *Zauderer*, 471 U.S. at 651 n.14)).

    Regulatory regimes frequently compel disclosure of these types of warnings. For example, Regulation Z (promulgated under TILA) requires that a creditor disclose the fact it is using estimates where "information necessary for an accurate disclosure is unknown to the creditor." 12 C.F.R. § 1026.17(c)(2)(i). The disclosure to the consumer of the fact that the estimate is based on assumptions gives the consumer context for how to view the estimate and thus helps prevent the disclosure from being misleading. *Cf. id.* § 1026.18(f) (requiring disclosure of conditions that may change the cost of variable rate financing).

    The Regulations require disclosures that do not hide the ball from small business owners. The disclosures are short, and set out all of the underlying

assumptions that go into the cost calculations upfront for the recipient to review. They are designed to fit on a couple of pages, and do not permit providers to use small print, footnotes, or any other inconspicuous fonts. 10 C.C.R. § 901(a)(7), (8). For these reasons, they bear no resemblance to the disclosures at issue in the cases cited by the Association, which involve disclosures that are hidden in small print in obscure locations on product labeling. (Opp'n 9–10.)

The disclosures simply provide estimated costs and other information to recipients of sales-based financing and open-end credit products. Recipients are free to judge for themselves whether those estimates are useful to their circumstances. To the extent the Association's members feel the need to elaborate on or provide context for these calculations, they are free to do so either within the disclosures themselves (subject to certain conditions and length limitations, 10 C.C.R. § 901(a)(9)) or in separate marketing materials, offer letters, or other documents. Cost disclosures that are transparent about how they are calculated satisfy *Zauderer* and do not violate the First Amendment, even if an industry group fears giving consumers additional information might cause them to be "scared off." (Opp'n 10); *see also Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 733 (9th Cir. 2017) ("The mere fact that a corporation can conjure up a possibly negative connotation of a word in a disclosure does not make the disclosure nonfactual.").

**3. The *Zauderer* inquiry should be resolved by the Court.**

The Opposition contends that whether a disclosure is purely factual and not misleading is a factual question that cannot be decided on a motion to dismiss. (Opp'n 8, 10–11.) Not so. Numerous courts, including the Ninth Circuit, have held the *Zauderer* inquiry can be decided as a matter of law and affirmed dismissals of similar challenges under Rule 12(b)(6). *Loan Payment Admin. LLC v. Hubanks*, 821 F. App'x 687, 690 (9th Cir. 2020) (finding that various California statutes satisfied the *Zauderer* test as a matter of law and affirming dismissal with prejudice under Rule 12(b)(6)); *see also Connecticut Bar Ass'n*, 620 F.3d at 100 (affirming

dismissal where disclosures required by the Bankruptcy Code satisfied *Zauderer* as a matter of law); *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 748–49, 768 (5th Cir. 2008) (same); *Poughkeepsie Supermarket Corp. v. Dutchess Cnty., N.Y.*, 648 F. App'x 156, 158 (2d Cir. 2016) (affirming dismissal under *Zauderer*).

The Association cites a series of cases brought under various consumer protection laws for the proposition that factual development is necessary on the issue of "how a recipient of the disclosures would interpret them." (Opp'n 9–11.) But none of these cases involve First Amendment claims. Instead, they generally involve claims by consumers suing manufacturers for unfair business practices or false advertising that are "evaluated from the vantage point of a 'reasonable consumer.'" *E.g.*, *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (internal citation omitted).[1]

The reasonable consumer test is not the standard under *Zauderer*. *Zauderer* only requires courts to determine whether a compelled commercial disclosure involves "purely factual and uncontroversial information." *CTIA - The Wireless Ass'n v. City of Berkeley, California* (*CTIA*), 928 F.3d 832, 842 (9th Cir. 2019) (internal quotations and citation omitted). Whether speech is inherently misleading, and thus not purely factual, for First Amendment purposes "is a question of law" for the court to decide. *Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*, 496 U.S. 91, 108 (1990); *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1056 (8th Cir. 2014).

This is made clear even in cases like *CTIA* which involve motions for preliminary injunctions. In *CTIA*, the Ninth Circuit's analysis of whether the disclosure was factual turned entirely on the panel's own interpretation of the text of the disclosure itself. *CTIA*, 928 F.3d at 846–47 (noting that the panel disagreed

---

[1] Even in the context of these consumer protection laws, "in the right circumstances, [a court] could grant judgment as a matter of law on whether a statement is deceptive or misleading," even if the issue is generally a question of fact. *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 728 F. Supp. 2d 1170, 1193 (D.N.M. 2010).

6

with CTIA's assertion that the disclosure was misleading because the panel "read the text differently").

Furthermore, the Association's position would require any government that enacts a compelled commercial disclosure requirement to undergo lengthy, expensive, and fact-intensive litigation about how hypothetical reasonable consumers would interpret the disclosures. That is not what the First Amendment requires. The First Amendment interests implicated by the types of compelled disclosures at issue here are "minimal," *Zauderer*, 471 U.S. at 651, and courts have been clear that the innumerable compelled disclosure regulations imposed by governments across the country do not "require an extensive First Amendment analysis." *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 316 (1st Cir. 2005) (Boudin, J. & Dyk, J., stating the opinion of the court); *see also Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 15 (1986) ("The State, of course, has substantial leeway in determining appropriate information disclosure requirements for business corporations."). Where the "required disclosures are intended to combat the problem of inherently misleading commercial advertisements," the government is not required to "adduce[] evidence that [these] advertisements are misleading." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250–51 (2010) (noting that the argument that the government is required to survey the public to determine whether a statement is misleading is foreclosed by *Zauderer*); *see also* Mot. 2–3 (explaining California's Disclosures Law was enacted to help small business owners understand the costs of nontraditional financing and protect them from being misled by confusing terminology).

A contrary rule that requires the state to prove that there is no reasonable way that the compelled disclosure would be misconstrued would be unreasonable. Indeed, one can easily imagine how such a standard could be weaponized by litigants to derail the enactment and enforcement of any type of disclosure

requirement. "*Zauderer* cannot be read to establish a 'factual and uncontroversial' requirement that can be so easily manipulated that it would effectively bar any compelled disclosure by the government." *CTIA-The Wireless Association v. City of Berkeley, California*, 139 F. Supp. 3d 1048, 1071 (N.D. Cal. 2015). The Court can determine whether the disclosures at issue here are purely factual.

### 4. The disclosures are not controversial.

The Supreme Court and Ninth Circuit have established that speech is controversial if it forces a speaker to "take sides in a heated political controversy," *CTIA*, 928 F.3d at 848, or in a matter of scientific debate that is subject to "robust disagreement by reputable scientific sources." *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022). The Association argues that speech outside of these two categories can be controversial, and asserts that any legislation or regulation that faces *any* opposition constitutes a controversy for *Zauderer* purposes. (Opp'n 11–12.) The Ninth Circuit has squarely rejected the argument the Association advances here.

In *CTIA*, the panel acknowledged there was a "controversy" in the sense that the trade association of cell phone companies disagreed with the city "about whether radio-frequency radiation can be dangerous to cell phone users." *CTIA*, 928 F.3d at 848. But the panel expressly rejected the notion that a "controversy" encompassed any public dispute, as the Association asks this Court to do here. *Id.* (holding that, despite the disagreement between the parties on this issue, "Berkeley's required disclosure is uncontroversial within the meaning of *NIFLA*"). *CTIA* thus forecloses the Association's argument.

### 5. The disclosures are reasonably related to California's interest in protecting recipients of financing products and are not unduly burdensome or unjustified.

A regulation that requires the disclosure of factual and uncontroversial information is justified "as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Zauderer*, 471 U.S. at

8

651. This is a "rational basis" standard. *Nationwide Biweekly Admin., Inc.*, 873 F.3d at 732. The Complaint admits the Department has an interest "in adopting regulations that promote truthful disclosures regarding the cost of commercial financing." (Compl. ¶ 14.) Thus, to the extent the Court finds that the Regulations' disclosure requirements are factual, that is the end of the inquiry.

Three of the four arguments advanced by the Opposition on this point are just a rehash of its contention that the Regulations' disclosures are not factual. (Mot. 15–16.) The only new argument is that the Regulations are unduly burdensome because of the potentially serious consequences of noncompliance. (Opp'n 13–14.) But even if true, this contention goes to whether the Association has standing to bring this pre-enforcement challenge in the first place. *See Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). The Association cites no authority for the proposition that this is relevant to the *Zauderer* inquiry. Nor has the Association attempted to argue that providing a few additional pages containing the short set of disclosures required by the Regulations as part of the packet of materials given to the recipient of financing is unduly burdensome. *See* 10 C.C.R. § 901(8); *Am. Beverage Ass'n*, 916 F.3d at 757 (holding that a disclosure that covered 20% of advertisement was unduly burdensome).

**B.     The Regulations Are Not Preempted by TILA.**

The Regulations are not preempted by TILA because (1) TILA provides that it only preempts "inconsistent" state laws, 15 U.S.C. § 1610(a)(1), and (2) TILA and the Regulations are consistent because TILA (and by extension, Regulation Z) only applies to consumer transactions while the Regulations only apply to commercial transactions. 15 U.S.C. §§ 1601(a), 1603(1); 12 C.F.R. § 1026.1(c)(1)(i), (iv); Cal. Fin. Code §§ 22802(a), 22803(a); Mot. 16–20. Restricting the scope of TILA's preemption provisions to consumer credit regulation does not stand as an obstacle to the accomplishment of Congress's purposes and objectives because Congress clearly stated that TILA's purpose and objective was to regulate consumer—and

only consumer—credit. *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (holding that the "plain wording of the [preemption] clause . . . necessarily contains the best evidence of Congress' pre-emptive intent" (quotations and citation omitted)). The Association speculates that limiting TILA's reach this way would lead to "absurd results" because small business owners also use consumer credit products subject to TILA (Opp'n 18). But the Opposition cites no authority for the proposition that TILA preemption extends to the regulation of any type of non-consumer credit product a small business owner may ever interact with.

Finally, the Court need not wait for the CFPB to issue a final preemption determination on this issue because TILA is not ambiguous on this point. If the Court disagrees, however, the Association contends that the CFPB's forthcoming determination will be entitled to no weight in the analysis. (Opp'n 20.) Not only is that argument foreclosed by Ninth Circuit precedent, *BNSF Ry. Co. v. California Dep't of Tax & Fee Admin.*, 904 F.3d 755, 762 (9th Cir. 2018), but it is particularly curious here because the Association is the party that asked the CFPB to make that determination in the first place. (Mot. 19.)

## III. CONCLUSION

For the reasons set forth above and in the Motion, the Court should dismiss the Complaint with prejudice.

Dated: March 13, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Craig D. Rust*
Craig D. Rust
Supervising Deputy Attorney General
Rachel J. Yoo
Deputy Attorney General

*Attorneys for Defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation, certifies that this brief contains 3,215 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 13, 2023

Respectfully submitted,

ROB BONTA

*/s/ Craig D. Rust*
CRAIG D. RUST
Supervising Deputy Attorney General
Rachel J. Yoo
Deputy Attorney General

*Attorneys for Defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation*

# CERTIFICATE OF SERVICE

| Case Name: | **Small Business Finance Association v. Clothilde Hewlett** | No. | **22-cv-08775-RGK-PLA** |
|---|---|---|---|

I hereby certify that on <u>March 13, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT CLOTHILDE HEWLETT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 13, 2023</u>, at San Diego, California.

|  M. Aguilar  |  *[signature]*  |
|---|---|
| Declarant | Signature |

SA2022803044
83853579.docx