UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-PLA | Date | March 30, 2023 |
|---|---|---|---|
| Title | *Small Business Financial Association v. Clothilde Hewlett* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS) Order Re: Defendant's Motion to Dismiss [DE 11]

## I.   INTRODUCTION

On December 2, 2022, the Small Business Financial Association ("Plaintiff") filed a Complaint against Clothilde Hewlett ("Defendant"), in her official capacity as the Commissioner of the California Department of Financial Protection and Innovation ("DFPI"). (ECF No. 1.) Plaintiff alleges that the DFPI's recently adopted regulations (the "Regulations")—which require providers of capital to small and medium-sized businesses to make certain disclosures about the costs and terms of their services—violate the First Amendment and are preempted in part by the federal Truth in Lending Act ("TILA"). (*See id.* ¶¶ 1–3.)

Presently before the Court is Defendant's Motion to Dismiss. (ECF No. 11.) For the following reasons, the Court **DENIES** the Motion.

## II.   FACTUAL BACKGROUND

The following facts are alleged in the Complaint, unless otherwise noted:

### A.   Plaintiff, its Members, and the Services Offered

Plaintiff is an advocacy organization that "educate[s] policymakers and regulators about the technology-driven platforms emerging in the small-business market." (Compl. ¶ 4.) Plaintiff's members (the "Providers") are financial services companies "specifically focused on providing efficient and responsible capital to small and medium-sized businesses across America," and are subject to the disclosure requirements underlying this litigation. (*Id.* ¶ 5.)

The services offered by the Providers are materially different from those offered by larger, more traditional banks. One such service, "Sales-Based Financing" ("SBF"), is a form of financing wherein a provider "purchases a portion of a business's future receivables at a discount and collects those

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-PLA | Date | March 30, 2023 |
|---|---|---|---|
| Title | *Small Business Financial Association v. Clothilde Hewlett* | | |

receivables as they are generated by the business." (*Id.* ¶ 9(i).) For example, an SBF provider might make an upfront payment of $10,000 in exchange for the small business's agreement to deliver 10% of its daily receivables until the provider has received $12,000. This type of transaction is not a loan; rather, it is a purchase-and-sale. As such, there is "no term, no interest rate, no fixed periodic payment, no accruing rate, and no absolute obligation to repay." (*Id.*)

Another service the Providers offer is called "Open-End Credit" ("OEC"). In an OEC transaction, a provider offers a small business a line of credit with a specified limit, and the business may draw against that limit as it sees fit. In many ways, OEC functions like a credit card for the small business. For example, the business can restore all or some of its credit by paying off all or some of its balance, and is not tied to a specific payment amount per month. Unlike a credit card, the provider of an OEC transaction typically charges a fixed fee every time the business draws on the line of credit, rather than an accruing rate.

SBF and OEC are "innovations in small business financing born out of necessity," because small businesses tend to have difficulty obtaining financing from banks or other traditional lenders. (*Id.* ¶ 10.) And even if a bank is willing to finance a small business, it often takes months to underwrite the loan and requires "significant business and/or personal collateral," along with guarantees from third parties. (*Id.*) In comparison, small businesses can receive financing from the Providers in mere hours, without the onerous requirements of traditional lenders.

**B.  State Bill 1235 and the Regulations**

State Bill (or "SB") 1235, enacted in 2018, was designed to "protect small businesses by providing them with accurate disclosures regarding the costs of various financing options." (*Id.* ¶ 11.) The statute requires providers of commercial financing of $500,000 or less to disclose: (1) the total amount of funds provided; (2) the total dollar cost of the financing; (3) the term or estimated length of the loan; (4) the method, frequency, and amount of payments; (5) a description of any prepayment policy; and (6) the total cost of financing "expressed as an annualized rate." (*Id.* (citing Cal. Fin. Code §§ 22802(b)(6), 22803(a)(6)).)

DFPI was tasked with implementing regulations that specifically delineated the contents of the required disclosures. After a lengthy notice-and-comment period, DFPI implemented the Regulations, which took effect on December 9, 2022. The Regulations require specific disclosures for SBF and OEC transactions, but the required information is inaccurate, or at least misleading to small businesses. For example:

- An SBF transaction is a purchase-and-sale, not a loan. Nonetheless, the Regulations mandate that financial providers disclose an estimated payment and estimated term for the transaction, even though "there is no required payment given the transaction is a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-PLA | Date | March 30, 2023 |
|---|---|---|---|
| Title | *Small Business Financial Association v. Clothilde Hewlett* | | |

purchase and sale." (*Id.* ¶ 21.) Therefore, requiring such a disclosure "materially undercuts the value proposition of the [SBF] transactions," because a "key differentiator of [SBF] products" is that they have "no fixed payment term or amount." (*Id.*) Various other required disclosures, including an estimation of the transaction's APR and a description of "prepayment rights," are also inaccurate or misleading for the same reason. (*Id* ¶¶ 23–30.)

- As to OEC transactions, the Regulations require a disclosure of the "actual cost of financing." (*Id.* ¶ 35.) But the "actual cost" is calculated by assuming that the recipient "will make an initial draw of their full approved credit limit, that the recipient will choose to make only minimum monthly payments, and that the recipient will not make any subsequent draws." (*Id.*) The trouble with this assumption is that no reasonable borrower would treat an open-end credit line in this manner, because it would make the ultimate cost of the transaction skyrocket. Therefore, the required disclosures mislead customers as to the actual cost of an OEC transaction, "effectively destroy[ing] the value of offering an open-end product." (*Id.*)

In sum, the required disclosures present the Providers with a significant problem: they require the use of "uniform terms" for very different products. (*Id.* ¶ 13.) Put another way, the Regulations require disclosures that treat "non-loan transactions [such as SBF transactions] . . . and open-end credit like closed-end loans." (*Id.*) In addition, the Regulations adopt terms defined by TILA—specifically, "APR" and "finance charge"—but define those terms differently than TILA does. For these reasons, the "speech compelled by the Regulations . . . does not translate into meaningful disclosures regarding the costs and characteristics" of the transactions at issue. (*Id.*)

### III.  JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff need not provide "detailed factual allegations" but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court must also "construe the pleadings in the light most favorable to the nonmoving party." *Davis v. HSBC*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-PLA | Date | March 30, 2023 |
|---|---|---|---|
| Title | *Small Business Financial Association v. Clothilde Hewlett* | | |

*Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### IV. DISCUSSION

Plaintiff alleges that: (1) the Regulations compel commercial speech in a manner that violates the First Amendment; and (2) the Regulations are preempted in part by TILA. Defendant argues that Plaintiff has failed to state either claim. The Court addresses each claim in turn.

#### A. First Amendment

According to Defendant, Plaintiff fails to state a viable First Amendment claim because the Regulations compel commercial disclosures in a constitutionally permissible manner. Plaintiff counters that because it has alleged, *inter alia*, that the Regulations' compelled disclosures are not purely factual, its First Amendment claim survives the pleading stage. The Court agrees with Plaintiff.

##### 1. Legal Standard

The First Amendment "prohibits laws that abridge the freedom of speech." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018). It also limits a government's ability to "[m]andat[e] speech that a speaker would not otherwise make." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). Therefore, laws that target speech based on its communicative content—either by prohibiting or compelling it—are "presumptively unconstitutional and may [typically] be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). In other words, such laws must survive a strict scrutiny analysis.

However, regulation of commercial speech, which is "expression related solely to the economic interests of the speaker and its audience," receives only intermediate scrutiny. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). And if the law compels commercial disclosures, the level of scrutiny is lower still; the law will survive so long as the compelled disclosure is truthful and "'reasonably related' to a substantial governmental interest." *CTIA—The Wireless Ass'n v. City of Berkeley, Cal.*, 928 F.3d 832, 845 (9th Cir. 2019) (hereafter, "*CTIA*"). To survive this lessened scrutiny, the government must show that the disclosure satisfies the test established in *Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626 (1985)—that the disclosure "is (1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." *Cal. Chamber of Comm. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 477 (9th Cir. 2022). The factors may be addressed in any order. *See Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 756 (9th Cir. 2019).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-PLA | Date | March 30, 2023 |
|---|---|---|---|
| Title | *Small Business Financial Association v. Clothilde Hewlett* | | |

The burden of establishing all of these elements is ultimately on Defendant, because the "party seeking to uphold [the] restriction on commercial speech carries the burden of justifying it." *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 142 n.7 (1994); *see also Am. Beverage Ass'n v. City & Cnty. of S.F.*, 871 F.3d 884, 890 ("At trial, San Francisco would carry the burden 'of demonstrating the legitimacy of its commercial-speech regulations,' and of showing that its regulation 'directly and proportionally' addresses San Francisco's interest.") (quoting *Zauderer*, 471 U.S. at 658–59) (affirmed *en banc* by *Am. Beverage Ass'n*, 916 F.3d 749). Therefore, at the pleading stage, it is sufficient for Plaintiff to allege that the Regulations fail to satisfy at least one of the *Zauderer* elements in order for its First Amendment claim to survive.

    2.    <u>*Zauderer* Analysis</u>

The Court finds that Plaintiff has sufficiently alleged that the disclosures mandated by the Regulations are not purely factual. Defendant argues primarily that the disclosures are "literally true," and therefore must be "purely factual". (*See* Def.'s Mot. Dismiss at 8.) To take a specific example: Defendant posits that disclosures about an OEC transaction's cost-of-credit—which require an assumption that a hypothetical borrower will draw the entire line of credit and then make only minimum monthly payments—are purely factual because the "assumptions are stated very clearly in the disclosures, and borrowers are informed that actual costs may differ substantially." (*Id.* at 13 (internal quote omitted) (citing 10 Cal. Code Regs. §§ 911(a)(2), (a)(2)(A), (a)(2)(B); *id.* § 940).)[1] But "[s]tatements are not necessarily factual and uncontroversial just because they are technically true." *Cal. Chamber of Comm.*, 29 F.4th at 479. Rather, a "statement may be literally true but nonetheless misleading and, in that sense, untrue." *CTIA*, 928 F.3d at 847; *see also Cal. Chamber of Comm. v. Becerra*, 529 F. Supp. 3d 1099, 1118 (E.D. Cal. 2021) ("The State cannot escape these uncertainties by . . . showing the warning contains no affirmative falsehoods."). For example, a disclosure that a certain chemical is "known to the State of California to cause cancer" would be literally true in a situation where California knows that the chemical causes cancer in animals but not humans. *Cal. Chamber of Comm.*, 29 F.4th at 479. Nonetheless, such a disclosure would be misleading, because "when consumers read 'known to the State of California to cause cancer' on the packaging of a food or beverage product, they would believe 'that such products pose a risk of cancer *in humans.*'" *Id; see also Nat'l Ass'n of Wheat Growers v. Becerra*, 468 F. Supp. 3d 1247, 1259 (E.D. Cal. 2020) ("While it may be literally true that California technically 'knows' that glyphosate causes cancer as the State has defined that term in the

---

[1] Another example concerns disclosures regarding an SBF transaction's estimated term. Defendant argues that such disclosures are factual because the estimated term is "based on specified assumptions" and the disclosures "clearly state that . . . the challenged terms are estimates and provide details about how they are calculated." (*Id.* at 10 (citing 10 Cal. Code Regs. §§ 914(a)(8)(C), (a)(6)).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-PLA | Date | March 30, 2023 |
|---|---|---|---|
| Title | *Small Business Financial Association v. Clothilde Hewlett* | | |

statute and regulations, the required warning would nonetheless be misleading to the ordinary consumer.").

Read as a whole, the Complaint alleges that the compelled disclosures do not accurately inform customers about the terms of the Providers' products because they misleadingly indicate that SBF and OEC function like traditional bank loans. For example:

- Regarding SBF transactions, Plaintiff alleges that providers must disclose an estimated payment and term. That disclosure is misleading because "there is no required payment amount given the transaction is a purchase and sale. A recipient may be in full compliance with their agreement but has made no 'payments' for weeks." (Compl. ¶ 21.) And requiring an estimated term "where there is no term gives the false impression that there is some term." (*Id.*)

    In addition, the disclosures mandate the use of terms that are contrary to the very nature of an SBF transaction. To wit, one disclosure requires a discussion of "unpaid interest accrued," but, as a purchase-and-sale, there is typically "no interest accrual on SBFs." (*Id.* ¶ 27.) In addition, providers are required to state that a recipient "owes" money, or that the money paid back to the provider is a "fee," but neither is technically correct. Rather, the "recipient sells to the provider a set amount of future receivables, which the recipient may or may not ultimately generate. If the recipient does not generate the receivables . . . then the recipient does not 'owe' the provider *anything*." (*Id.* ¶ 28.). Taken together, the required disclosures "require SBFA's Members to describe their sales-based financing arrangements in ways that misstate the costs and features of the financing." (*Id.* ¶ 20.)

- As to OEC transactions, Plaintiff alleges that it is misleading to "require providers of open-end credit to assume that the recipient will make an initial draw of their full approved credit limit, that the recipient will choose to make only minimum monthly payments, and that the recipient will not make any subsequent draws." (*Id.* ¶ 35.) Such a disclosure "eviscerates" the main selling point of OEC, which is that the recipient can "make multiple draws and repay as the recipient deems appropriate." (*Id.*)

Defendant argues that the disclosures are not misleading because the terms either comport with plain meaning or the disclosures "clearly disclose that they are based on estimates and assumptions . . . and do not purport to be anything other than estimates." (Def.'s Mot. Dismiss at 8.) But whether or not small business owners may be misled is a factual matter that the Court will not resolve on the pleadings. *Cf. Cal. Chamber of Comm.*, 29 F.4th at 479 (affirming grant of preliminary injunction after examining evidence of consumer surveys to determine whether a disclosure was misleading); *R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.*, 2022 WL 17489170, at *14–15 (E.D. Tex. Dec. 7, 2022)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-PLA | Date | March 30, 2023 |
|---|---|---|---|
| Title | *Small Business Financial Association v. Clothilde Hewlett* | | |

(finding compelled disclosures misleading after examining the record and determining that "consumers may perceive expression whose truth has not been established by the record").

Therefore, Plaintiff has plausibly alleged that the Regulations compel speech that is not purely factual, which is sufficient for its First Amendment claim to survive dismissal.

  **B.** **TILA Preemption**

Plaintiff's second claim alleges that the Regulations are preempted by TILA, either expressly or via conflict preemption. The claim is premised upon the Regulations' use of two terms: "APR" and "finance charge." Both terms are used in TILA, but the Regulations define them differently.[2] (*See* Compl. ¶ 51.) Because the terms are defined differently, Plaintiff claims, the Regulations are inconsistent with TILA and are therefore preempted. Defendant counters that TILA addresses only consumer finance rather than commercial finance, and therefore cannot preempt the Regulations. The Court begins by summarizing the relevant TILA provisions before proceeding to its preemption analysis.

    1. *TILA*

TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). To effectuate this purpose, TILA requires certain disclosures in connection with *consumer*, rather than commercial, credit transactions. *See id.* §§ 1637(a), 1638a, 1638a(a). And Congress defined a consumer credit transaction as one in which "the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Id.* § 1602(i). While TILA includes an express preemption clause, it only annuls State laws "to the extent those laws are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency." *Id.* § 1610(a)(1).

---

[2] For example, the Regulations define "finance charge" to include broker fees and purchase discounts taken as part of SBF transactions. *See* 10 Cal. Code Regs. §§ 900(a)(13), 943(a)(1)–(2). TILA does not include purchase discounts or broker fees in its definition of "finance charge."

In addition, the Regulations "require the APR to be calculated at the time of disclosure, which must be when an offer is made," but TILA "requires the APR calculation to be based on the actual term of the transaction, and the term starts on the date of consummation—not on the date an offer is made," which "may result in different APRs for the exact same product." (Compl. ¶ 55.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-PLA | Date | March 30, 2023 |
|---|---|---|---|
| Title | *Small Business Financial Association v. Clothilde Hewlett* | | |

2. *Preemption Analysis*

With the relevant TILA provisions in mind, the Court now analyzes the preemption issue. Federal law may preempt state law in one of three ways: (1) expressly; (2) by occupying the relevant legal field; or (3) where state law presents an actual conflict with federal law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Express preemption exists where Congress explicitly states its intent to preempt state law. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977). Field preemption occurs where federal regulation of a particular area is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Finally, a state law may be impliedly preempted even where Congress has not occupied the relevant field, so long as "state law conflicts with a federal statute." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013). Conflict preemption may arise where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002). Put another way, conflict preemption may exist where state law "frustrates the purpose of [] national legislation." *McClellan v. Chipman*, 164 U.S. 347, 357 (1896).

At the outset, the Court can rather easily dispose of express preemption. TILA explicitly applies only to consumer credit transactions, which are offered only to "natural person[s]" and are used for "personal, family, or household purposes." 15 U.S.C. § 1602(i). In contrast, the Regulations apply only to commercial credit transactions. Therefore, the Regulations are not "inconsistent with" TILA's provisions—the two sets of rules apply to completely separate types of financial transactions. TILA makes clear that state laws are not preempted absent an inconsistency, and therefore the Regulations are not subject to express preemption. *See id.* § 1610(a)(1).

However, Plaintiff has sufficiently alleged that the Regulations may be subject to conflict preemption. According to the Complaint, "small business owners often finance their businesses through a combination of commercial finance products and consumer finance products available to them individually (*e.g.*, consumer loans, home equity loans, credit cards)." (Compl. ¶ 57.) As a result, when small business owners seek financing, they "routinely compare products that are subject to TILA with products that are not subject to TILA." (*Id.*) Therefore, according to the Complaint, these customers are likely to be confused by the Regulations' failure to define "APR" and "finance charge" in the way that TILA does, thereby frustrating TILA's purpose: to "avoid the uninformed use of credit." 15 U.S.C. § 1601(a).

Taken as true, these allegations are sufficient to show that the Regulations may obstruct TILA's purpose. And resolution of the factual issues necessary to determine preemption—whether small-business owners do in fact mix-and-match consumer and commercial credit options and whether they would be confused by the differing terms—is inappropriate at this time. *See Chowdhury v. N.W. Airlines Corp.*, 238 F. Supp. 2d 1153, 1157 (N.D. Cal. 2002) ("[I]t is difficult to resolve the preemption issue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-PLA | Date | March 30, 2023 |
|---|---|---|---|
| Title | *Small Business Financial Association v. Clothilde Hewlett* | | |

without discovery and a clear understanding of what the facts actually are."); *see also Chao Chen v. Geo Grp., Inc.*, 287 F. Supp. 3d 1158, 1167 (W.D. Wash. 2017) ("Defendant's conflict preemption argument is premature, because it relies on factual determinations . . . ."). Therefore, Plaintiff's TILA preemption claim survives dismissal as well.

**V.      CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | JRE/ap |