DAN MARMALEFSKY (CA SBN 95477)
DMarmalefsky@mofo.com
NANCY R. THOMAS (CA SBN 236185)
NThomas@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone:  213.892.5200
Facsimile:   213.892.5454

Attorneys for Non-Party
REWARDS NETWORK
ESTABLISHMENT SERVICES INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMALL BUSINESS FINANCE ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>CLOTHILDE HEWLETT, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation,<br><br>Defendant. | Case No. 22-cv-08775-RGK-SK<br><br>**DESIGNATING NON-PARTY REWARDS NETWORK ESTABLISHMENT SERVICES INC.'S STATEMENT REGARDING FURTHER REDACTED VERSION THAT AVOIDS THE NEED FOR SEALING OR, IN THE ALTERNATIVE, IN SUPPORT OF DEFENDANT'S APPLICATION TO FILE PORTIONS OF DISCLOSURES AND AN AGREEMENT UNDER SEAL** |

## INTRODUCTION

Pursuant to Local Rule 79-5.2.2(b)(i), Non-Party Rewards Network Establishment Services Inc. (Rewards Network) submits this Statement regarding its proprietary and confidential Receivables Purchase and Marketing Agreement (the "Agreement") and disclosures made pursuant to the California regulations, numbered RN0184-0195, both subject to Defendant's Application to Seal. (ECF No. 53.)

Defendant's Statement of Undisputed Facts (SUF) establishes that the Agreement is cumulative of up to nine other pieces of evidence in the record, so there was no need for Defendant to submit it in the first place. Defendant's SUF also confirms that Defendant could and should have redacted the disclosures and almost all of the provisions in the Agreement, as contemplated by Local Rule 79-5.2.2(b)(i), because those portions of the documents were not cited in its Motion for Summary Judgment. This would have left only provisions that are not do not have to be filed under seal. Rewards Network has attached a version of the Agreement that can be filed in the public record as Exhibit A (the "Redacted Version") and respectfully requests that the Court either strike its Agreement from the record as redundant, or order Defendant to file the Redacted Version, for the reasons discussed below.

Even if that were not the case, in the alternative, Rewards Network has identified the portions of the Agreement that are proprietary and confidential and would cause competitive disadvantage if disclosed in Exhibit 1 to the supporting Declaration of Dan Badie. Rewards Network asks that if the Court does not strike the Agreement from the record or order filing of the Redacted Version, that it grant the Application as to the highlighted text in Exhibit 1. Defendant and non-party Rewards Network have conferred about filing under seal, and Defendant does not oppose it.

2
DESIGNATING NON-PARTY REWARDS NETWORK'S STATEMENT RE REDACTION OR SEALING

## I. DEFENDANT'S STATEMENT OF UNDISPUTED FACTS ESTABLISHES THAT THERE WAS NO NEED FOR DEFENDANT TO FILE RETHAT WARDS NETWORK'S CONFIDENTIAL DOCUMENT AT ALL OR DEFENDANT COULD AND SHOULD HAVE FILED A REDACTED VERSION THAT DID NOT REQUIRE SEALING.

With its Motion for Summary Judgment (MSJ), Defendant filed Rewards Network's entire Agreement and disclosures, which Rewards Network designated as Confidential under the Protective Order entered in this action. (ECF No. 52-13, MSJ Ex. 11-165-176.) As reflected in the chart below, Defendant cites to the Agreement only for broad generalizations, which it supports with at least two and up to nine additional citations, rendering Rewards Network's Agreement superfluous. There is not one SUF for which Defendant relies solely on Rewards Network's confidential and proprietary agreement. Therefore, the Court should strike Rewards Network's confidential and proprietary Agreement from the record as cumulative and unnecessary.

Even if that were not the case, Defendant does not cite to the disclosures at issue in the case at all, and cites only to five paragraphs of the Agreement plus the Primary Terms on the first page the Agreement (but not any of the actual pricing terms on that page). (ECF No. 52-28, SUF Nos. 2, 6, 15, 16, 17, 19, 20, 56.) Defendant does not cite to anything in the rest of the Agreement. Accordingly, all of the pages and provisions other than, at most, the five cited paragraphs plus the initial summary page can be and should have been redacted since they have no bearing on Defendant's arguments.[1] *See, e.g.*, C.D. Cal. Local Rule 79-5.2.2(b) (requiring the filing party and designating party to "attempt to eliminate or minimize the need for filing under seal by means of redaction" and to the need to file an application for sealing *only* if "the document cannot be suitably redacted"); *cf. DeMartini v. Microsoft Corp.*, No. 22-CV-08991-JSC, 2023 WL 4205770, at *6 (N.D. Cal. June 26, 2023) (granting application to seal information for which "[t]he

---

[1] The Redacted Version excludes pages of the Agreement for which all text would be redacted because there are no provisions on those pages cited by Defendant.

public's interest in disclosure . . . is minimal given that the [information to be sealed] . . . is not central to the ongoing merits of the case").[2]

Turning to the parts of the Agreement cited in the SUF, as set forth in the following chart and as reflected in the Redacted Version (attached as Exhibit A), the broad, general statements in the SUFs that cite to the Agreement concern very limited parts of the Agreement that are not Confidential:

| SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176) | Number of Cites for the SUF | Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed] |
|---|---|---|
| SUF2: small business sells portion of its future sales receipts to purchaser for lump sum advance (citing ¶ 1) | 10 | Unredacted portion of Primary Terms on first page of Agreement in the Redacted Version specifies that the small business is selling a percentage of future Card Receivables for the Purchase Price.<br><br>DFPI does not refer in any way to the actual pricing or the other language on this page, all of which is proprietary and confidential information of a non-party. |
| SUF6: small business pays the purchaser a | 9 | Unredacted portion of Primary Terms on first page of Agreement in the Redacted Version indicates that Rewards Network buys the Amount Sold and |

---

[2] As reflected in the meet and confer emails, Rewards Network's counsel asked Defendant's counsel to identify the specific paragraphs of the Agreement Defendant would be citing in the Motion, and urged him to redact entire sections of the Agreement that have no bearing on the Motion, but Defendant's counsel declined to do so.  (ECF No. 54-1, Ex. A to Decl. of D. Beteta in Supp. of Def.'s Appl. to Seal.)

| SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176) | Number of Cites for the SUF | Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed] |
|---|---|---|
| percentage of its sales from a designated account on a daily or weekly basis until it pays back the amount sold (citing Primary Terms on p. 1, but not any pricing terms specific to the Agreement, and ¶ 6) | | that the small business assigns a percentage of its Receivables until Rewards Network has received the Amount Sold.<br><br>Unredacted portion of ¶ 5 in the Redacted Version provides that the small business will deliver the Specified Percentage of Card Receivables generated daily or weekly until it has delivered the Amount Sold.<br><br>Defendant also cites to pages 166, 167 and 168 of the Agreement, but does not cite to any particular paragraph; nor is there any need to put all three pages into the public record since the statement in this SUF is covered by the unredacted portion of the first page and ¶ 5. |
| SUF15:  a variable payment contract does not specify a fixed payment and | 2 | Unredacted portion of first page of Agreement in the Redacted Version indicates a fixed percentage and not a fixed payment amount.  DFPI does not refer in any way to the actual pricing or the other |

| SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176) | Number of Cites for the SUF | Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed] |
|---|---|---|
| only specifies a fixed percentage (citing Primary Terms on first page, but not any pricing terms specific to the Agreement) | | language on this page, all of which is proprietary and confidential information of a non-party. |
| SUF16: small business gives purchaser "almost real time access" to a designated account to allow for payments without adjustment (citing ¶ 6) | 3 | Unredacted first sentence of the cited paragraph in the Redacted Version provides authorization for the payment processor to provide information for all Payment Card transactions. Nothing else in the cited paragraph refers to access to an account. |
| SUF17: Contracts allow | 6 | Unredacted first sentence of the cited paragraph in the Redacted Version provides for a repurchase |

| SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176) | Number of Cites for the SUF | Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed] |
|---|---|---|
| prepayment and some offer discount (citing ¶ 17) | | option.  Nothing else in the cited paragraph concerns the SUF. |
| SUF19: Contracts provide various remedies in the event of default (citing ¶ 13) | 6 | The cited paragraph is unredacted in the Redacted Version and can be filed in the public record. |
| SUF20: some purchasers take a security interest in the receivables and deem the small business in breach on all contracts that are not current (citing ¶ 18) | 3 | The cited paragraph is unredacted in the Redacted Version and can be filed in the public record. |

| SUF Citing Non-Party Rewards Network's Agreement (Ex. 11-165-176) | Number of Cites for the SUF | Cited Text [Rewards Network takes no position on whether the SUFs are accurate or are undisputed] |
|---|---|---|
| SUF56: some contracts do not show "these metrics" (citing Primary Terms on p. 1 of the Agreement, but not any pricing terms specific to the Agreement) | 2 | Unredacted portion of Primary Terms on first page of Agreement in the Redacted Version appears to be the cited material.<br><br>DFPI does not refer in any way to the actual pricing or the other language on this page, all of which is proprietary and confidential information of a non-party. |

Accordingly, Rewards Network respectfully requests that the Court either strike its confidential and proprietary Agreement as superfluous, or that the Court order Defendant to file the Redacted Version in the public record because nothing else in the Agreement is cited in Defendant's Motion and per the Local Rules, those portions should have been redacted to avoid the need for filing under seal.

**II.    IN THE ALTERNATIVE, PORTIONS OF THE AGREEMENT SHOULD BE SEALED BECAUSE THEY ARE CONFIDENTIAL AND PROPRIETARY AND WOULD CAUSE COMPETITIVE DISADVANTAGE IF DISCLOSED TO REWARDS NETWORK'S COMPETITORS.**

The supporting Declaration of Dan Badie establishes that there are compelling reasons to seal portions of the Agreement, which Rewards Network will refer to these portions of the Agreement as the "Confidential Information."

Rewards Network requests sealing only select portions of the Agreement, as reflected in Exhibit 1 to the Designating Non-Party's Declaration in support of Application to File Under Seal, filed concurrently.[3]

Under Federal Rule of Civil Procedure 26(c), this Court may seal court documents to protect "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). Sealing is appropriate where "compelling reasons" exist to protect the information from being disclosed to the public. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–80 (9th Cir. 2006).

The Confidential Information reflects confidential, proprietary information that Rewards Network designated as "Confidential" under the Stipulated Protective Order (ECF No. 37.) and that Rewards Network treats as highly confidential in the ordinary course of its business, and does not disclose to other customers or its competitors. (Designating Non-Party's Dan Badie Decl. in Supp. of Appl. to File Under Seal ¶ 6.) Specifically, the Confidential Information contains information regarding Rewards Networks' proprietary pricing and contract terms—the disclosure of which would put Rewards Network at a competitive disadvantage. (*Id*. ¶¶ 4-5.) A competitor could and likely would copy the contractual provisions and product design reflected in those terms to avoid the need to spend the significant time and expense Rewards Network spent to develop those terms and its product design and to compete unfairly based on pricing information in the Confidential Information. (*Id*.)

For example, in SUF 16, DFPI cites to Agreement paragraph 6 regarding Authorized Processors for the purported "Undisputed Fact" that a small business

---

[3] Note that the redactions in the Redacted Version (Ex. A) are different in some instances than the portions Rewards Network would ask to seal if the Court does not authorize filing of the Redacted version (Ex. 1 to the Designating Non-Party's Decl.). This is because the Redacted Version, as contemplated by Local Rule 79-5.2.2(b), redacts all provisions that are not relevant to Defendant's Motion. The proposed version for filing under seal identifies portions of the Agreement that meet the requirements for filing under seal.

that enters into an MCA agreement is required to give the purchaser "almost real-time access to a designated account where its sales receipts accumulate," as the method by which the small business pays the purchaser from the small business's credit card receipts.  The mechanism by which Rewards Network obtains information regarding a small business's credit card receivables is set out in detail in the Agreement.  Rewards Network uses a different mechanism than many other MCA providers and its mechanism is more accurate than other methods.  A competitor who has access to those details could copy them and obtain those efficiencies without the need to spend the time and effort Reward Network spent to develop its process.  This would allow competitors to gain an unfair advantage.  (*Id*. ¶ 5.)

Courts routinely grant motions to seal documents containing this type of information.  *See, e.g.*, *McCurley v. Royal Seas Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2018 WL 3629945, at *2 (S.D. Cal. July 31, 2018 (granting application to seal contract terms because designating party met the "compelling reasons standard to warrant filing the [contract] under seal" because it "contain[s] business information which competitors could potentially misuse if disclosed"); *Stout v. Hartford Life & Acc. Ins. Co.*, No. CV 11-6186 CW, 2012 WL 6025770, at *2 (N.D. Cal. Dec. 4, 2012) (granting application to seal contract terms because designating party established "compelling reasons for sealing" contract terms that would allow competitors to use the confidential information that would "undermin[e the designating party's] ability to compete")

The risk of competitive disadvantage is particularly acute here given that Defendant has involved many of Rewards Network's competitors in this lawsuit such that there is good reason to expect competitors will be reviewing the docket and will therefore have access to Rewards Network's proprietary pricing and contractual terms if it is not sealed.  Moreover, as a third party, Rewards Network is entitled to even more protections than would be the case for a party whose claims

1. and defenses are at issue in the suit.
2.     Counsel for Rewards Network has discussed this Application with Defendant's counsel and confirmed that Defendant does not oppose sealing of the Agreement. Accordingly, Rewards Network respectfully requests that if the Court does not strike its Agreement from the record or order Defendant to file the Redacted Version, that the Court grant Defendant's Application and seal the Confidential Information reflected in the version of the Agreement attached to the Badie Declaration as Exhibit 1.

Dated: September 29, 2023     MORRISON & FOERSTER LLP

By: /s/ Nancy R. Thomas
    Nancy R. Thomas

*Attorneys for Non-Party*
***Rewards Network***
***Establishment Services Inc.***

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Non-Party Rewards Network Establishment Services Inc., certifies that this brief contains 2470 words, which complies with the word limit of L.R. 11-6.1

Dated: September 29, 2023

MORRISON & FOERSTER LLP

By: /s/ Nancy R. Thomas
Nancy R. Thomas

*Attorneys for Non-Party*
**Rewards Network Establishment Services Inc.**

# EXHIBIT A

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



Date of Agreement: 1/24/2023

# REWARDS NETWORK RECEIVABLES PURCHASE AND MARKETING AGREEMENT

This Rewards Network Receivables Purchase and Marketing Agreement (the "Agreement") is between Rewards Network Establishment Services Inc., a Delaware corporation ("Rewards Network," "We," and/or "Us"), and each of the legal entities set forth below (collectively, "Merchant" and/or "You").

| Legal Name of Merchant | Public Name of Merchant | State of Formation |

| Location Address | City | State | Zip Code |

## Primary Terms

In this Agreement, you are selling to us a percentage of the payments your customers make with credit, debit, and other types of payment cards ("Card Receivables").

We agree to buy from you (and you agree to sell to us) the amount of future Card Receivables shown below (the "Amount Sold") in exchange for the "Purchase Price" shown below. In order to deliver to us the Amount Sold, you assign to us the share of your Receivables ("Specified Percentage") shown below, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from the date we deliver the Purchase Price until we have received the entire Amount Sold.

**Purchase Price:** ▮▮▮▮

**Amount Sold:** ▮▮▮▮

**Specified Percentage:** ▮▮▮

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B

# rewards network

## MERCHANT PAYMENT PROCESS

**5. Merchant Payment Amount.** After we pay you the Purchase Price and beginning on a date determined in our sole discretion, you will deliver to us the Specified Percentage of Card Receivables generated ███ every day ███ or every week ███ until you have delivered to us the Amount Sold. ███

███ If the amounts that result from the Specified Percentage include fractional cents, you authorize us to round the amounts up or down to the nearest penny.

**6.** ███

a. **Use of Authorized Processors.** You agree to accept Payment Cards for business transactions at all Participating Locations, to use only Payment Card processors authorized by us ("Authorized Processor(s)") to process all of your Payment Card transactions, and to provide us with information for all Payment Card transactions at such locations through the Authorized Processors. ███

b. ███

c. ███

7. ███

Page 3 of 10

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B

rewards network



**13. Obligations Upon an Event of Non-Performance.**

a. Upon any Event of Non-Performance, and except as provided in subpart 13(b) below, we may exercise any and all rights and remedies available to us under applicable law, including without limitation all rights and remedies under this Agreement and the Uniform Commercial Code (UCC). You agree that each Event of Non-Performance has the effect of preventing us from obtaining the Card Receivables we purchased from you, and that the full undelivered Card Receivables balance therefore constitutes a reasonable amount of liquidated damages to which we shall be entitled if any Event of Non-Performance occurs. You further agree that we shall be entitled to recover all unpaid fees and other amounts due to us under this Agreement. All of these amounts are immediately due and payable if an Event of Non-Performance occurs, and you agree that we are authorized to withdraw these amounts from the Bank Account without further notice to you. In the event that a legal proceeding is brought to enforce or obtain a declaration of our rights under this Agreement, you agree to pay all reasonable attorneys' fees, costs, and expenses we incur in any and all such proceedings. All rights and remedies available to us are cumulative and not exclusive of any other remedies available to us in law or equity, or under other sections of this Agreement.



**TERMINATION OF AGREEMENT**

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B



## REPURCHASE OF CARD RECEIVABLES

**17. Repurchase of Card Receivables.** If there are Card Receivables sold to us but undelivered, and no Event of Non-Performance under Section 12 has occurred, you have the option to repurchase the undelivered Card Receivables ("Repurchase Option").

## SECURITY INTEREST PLEDGED IN COLLATERAL

**18. Security Interest and Collateral Pledged.** As security for the prompt, full and timely performance and observance of the obligations and agreements set out in Sections 12 and 13 of this Agreement, you hereby grant to us a continuing security interest (the "Security Interest"), which will remain in full force and effect until the balance of Card Receivables we purchased has been reduced to zero and all fees and other amounts due to us under this Agreement have been paid, in the following: All of your personal property and fixtures, tangible and intangible, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (the "Collateral"), including without limitation: all equipment, furniture, artwork, inventory, instruments, investment property, documents, general intangibles, deposits, contract rights, tradenames, trademarks, patents, supporting obligations, payment intangibles, chattel paper, commercial tort claims, licenses, liquor licenses, permits, franchise agreements, payments due from credit card and bank card companies or processors, accounts receivable, accounts, leases, deposit accounts, refunds of bonds, monies due or to become due from the State Liquor Authority and/or State Division of Alcoholic Beverage Control and, to the extent not listed above as original collateral, all products and proceeds of all of the Collateral in whatever form, including, without limitation, all payments under insurance, whether or not we are the loss payee thereof, all proceeds of any governmental taking, and any indemnity, warranty, letter of credit (including the right to draw on such letter of credit), or guaranty payable by reason of any default under, loss of, damage to or otherwise with respect to, any of the foregoing. The Security Interest that you grant us is being given solely for the purpose of ensuring that you do not act to deprive us of our bargained-for ability to collect the Card Receivables as they are generated in the ordinary course of your business, as your business was described to us when we considered your Application to participate in our Program. The Security Interest does not secure repayment of a debt obligation and we have no right to demand payment of the balance of the Amount Sold in the absence of an Event of Non-Performance under Section 12.

19.

## OTHER TERMS AND CONDITIONS

20.

21.

**CONFIDENTIAL**

RN0190

Exhibit A, Page 16

DocuSign Envelope ID: F4BB1069-3D6E-4160-B3A7-EF21B6AF279B

rewards network

[redacted content]

BY SIGNING THIS AGREEMENT IN THE SPACE PROVIDED BELOW, YOU AGREE TO THE TERMS OF THE AGREEMENT AS OUTLINED ABOVE, INCLUDING THE ARBITRATION CLAUSE IN SECTION 25 AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE AGREEMENT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS AGREEMENT, WE GAVE IT TO YOU AND YOU WERE FREE TO REVIEW IT.

By: [redacted]
Authorized Signature      Print Name      Title

[redacted]
Authorized Signature      Print Name      Date: 1/24/2023

[redacted]
Cell Phone Number