1  ROB BONTA
   Attorney General of California
2  LISA W. CHAO
   MICHAEL D. GOWE
3  Supervising Deputy Attorneys General
   DOUGLAS J. BETETA (SBN: 260377)
4  RACHEL J. YOO (SBN: 293598)
   Deputy Attorneys General
5    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
6    Telephone:  (213) 269-6622
     Fax:  (916) 731-2128
7    E-mail:  Douglas.Beteta@doj.ca.gov
              Rachel.Yoo@doj.ca.gov
8  *Attorneys for Defendant
   Clothilde Hewlett, solely in her official capacity as
9  Commissioner of the California Department of
   Financial Protection and Innovation*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **SMALL BUSINESS FINANCE ASSOCIATION,**<br><br>Plaintiff,<br><br>v.<br><br>**CLOTHILDE HEWLETT, solely in her official capacity as commissioner of the California Department of Financial Protection and Innovation,**<br><br>Defendant. | Case No.: 2:22-cv-08775-RGK-PLA<br><br>**DEFENDANT'S OPPOSITION TO MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANT'S EXPERT ADAM J. LEVITIN**<br><br>Date:          October 30, 2023<br>Time:          9:00 a.m.<br>Courtroom:     850<br>Judge:         Hon. R. Gary Klausner<br>Trial Date:    December 12, 2023<br>Action Filed:  December 2, 2022 |

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities ................................................................. 1
    I.    Introduction ................................................................................................ 1
    II.   Professor Levitin's Expert Report ............................................................. 1
    III.  Argument .................................................................................................... 3
          A.    Professor Levitin's Report Is Relevant ........................................... 4
               1.    Professor Levitin Possesses "Technical Knowledge" about MCAs ................................................ 4
               2.    Courts Have Relied on Professor Levitin's Opinions ................................................................................ 6
               3.    Even Applying Courts' Reasoning that Excluded His Opinions, Professor Levitin's Opinions Are Not Impermissible Legal Opinions ................................. 7
          B.    Professor Levitin's Report Is Based on Reliable Methodology ................................................................................... 10
    IV.  Conclusion ............................................................................................... 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Fid. Assurance Co. v. Bank of New York Mellon*
No. CIV-11-1284-D, 2018 WL 11425260 (W.D. Okla. Feb. 28, 2018) ............................................................................................................. 8

*Andrade v. American First Finance, Inc.*
No. 18-CV-06743-SK, 2023 WL 4238480 (N.D. Cal. June 27, 2023) ............................................................................................................. 7

*Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc.*
No. 3:16-cv-356-WHB-JCG, 2018 WL 9811820 (S.D. Miss. Mar. 21, 2018) ........................................................................................................ 6, 7

*Daubert v. Merrell Dow Pharm., Inc.*
509 U.S. 579 (1993) ................................................................................... 3

*Flores v. Arizona*
516 F.3d 1140 (9th Cir. 2008) ............................................................. 6, 12

*Huddleston v. Herman & MacLean*
640 F.2d 534 (5th Cir. 1981) ................................................................. 4, 5

*Kumho Tire Co., Ltd. v. Carmichael*
526 U.S. 137 (1999) ............................................................................. 3, 12

*Mazzei v. Money Store*
829 F.3d 260 (2nd Cir. 2016) ................................................................ 6, 7

*Nat'l Credit Union Admin. Bd. v. UBS Sec., LLC*
No. 12-2591-JWL, 2017 WL 513970 (D. Kan. Feb. 8, 2017) .............. 8, 10

*Tovey v. Nike, Inc.*
No. 1:12-CV-448, 2014 WL 3510636 (N.D. Ohio Jul. 10, 2014) ............ 12

*U.S. v. Sandoval-Mendoza*
472 F.3d 645 (9th Cir. 2006) ..................................................................... 3

*Zauderer v. Off. of Disciplinary Counsel*
471 U.S. 626 (1985) ......................................................................... 8, 11, 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   First Amendment ..................................................................................1, 3

**COURT RULES**

Federal Rules of Evidence
   Rule 401..................................................................................................4
   Rule 702...........................................................................................4, 13

**OTHER AUTHORITIES**

Senate Bill No. 1235, Glazer. Commercial financing: disclosures
   (2018) .....................................................................................................3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Professor Levitin is a leading scholar of consumer and commercial finance and financial regulation and recognized as an expert in these fields by both federal and state agencies as well as Congress. His knowledge and insight to sales-based financing led the State of New Jersey to retain him in litigation against a sales-based financing lender. Despite his credentials and experience, SBFA moves to exclude some of his opinions before taking his deposition.

In its motion, SBFA confuses opinions on ultimate legal issues with opinions on underlying facts that are informed by legal knowledge. The former is impermissible, while the latter is well within the realm of permissible expert opinion. The ultimate legal issue in this case is whether the regulations at issue (the Regulation) violate the First Amendment rights of SBFA's members. Professor Levitin does not provide any opinion on that issue. In fact, he provides an express disclaimer on that issue. Nonetheless, SBFA claims that he opines on the legal rights and obligations of its members and applies law to their financing contracts. He does not. His analysis and observation about SBFA members' contracts are to illustrate how sales-based financing operates and to show how it often functions like a loan. Even applying courts' reasoning that excluded his opinions, Professor Levitin's opinions in this case are not impermissible because his extensive knowledge and understanding of sales-based financing is not within the common knowledge of fact finders. His opinions are not opinions of law, and thus, the court should deny SBFA's motion.

## II. PROFESSOR LEVITIN'S EXPERT REPORT

Professor Levitin is a professor of law and finance at Georgetown University. He is an expert on, among other subjects, consumer and commercial finance and financial regulation. He has previously served as an expert witness for the Consumer Financial Protection Bureau and, in particular, for the State of New

Jersey in litigation against a sales-based financing company. *Bruck v. Yellowstone Capital, LLC*, No. HUD-c-180-20 (N.J. Sup. Ct., Chancery Division, Hudson County).

In this action, Professor Levitin was retained to opine on the following six topics:

1. The nature of the small dollar commercial financing market and small dollar commercial financing borrowers;
2. The nature and structure of merchant cash advances (MCAs)[1];
3. The relationship between performance guaranties and personal guaranties in MCAs;
4. The difficulty in determining whether a transaction is in fact a non-loan transaction;
5. Whether the pre-regulation, voluntary disclosure of MCA terms was inherently likely to be confusing to many of the businesses that use them; and
6. The importance of the Annual Percentage Rate (APR) as a standardized measure of credit cost disclosure.

His opinions are based on his extensive experience in teaching and writing about financial products and markets and their regulation, his knowledge from previous expert engagements, as well as his research following the engagement in this case. (Levitin Report, ¶¶ 12-13, 17.) Throughout the report, he discusses the structure, regulation, and custom and practices of small business finance in general and MCAs in particular. (*Id*. ¶¶ 26-54, 82-88.) He also explains how MCAs operate and why courts have repeatedly held them to be disguised loans, which makes the Regulations' approach to sales-based financing reasonable. (*Id*. ¶¶ 55-81.) By comparing different MCAs and showing, *inter alia*, how disclosures

---

[1] MCAs are a form of sales-based financing, and the terms are often used interchangeably. (Levitin Report ¶¶ 52-53; Mot. at p. 4:18-20, Dkt. 59.)

1  graphically mimic the layout of consumer credit cost disclosures, but for
2  substantively different information, he illustrates the inherent risk of confusion
3  posed by voluntary disclosure of MCA terms prior to the Regulations. (*Id*. ¶¶ 89-
4  111.) Moreover, he dispels misconceptions about the APR, including in the
5  California Senate analyses of Senate Bill 1235. (*Id*. ¶¶ 112-131.) Without taking
6  his deposition, SBFA moves to exclude all of Professor Levitin's opinions, except
7  his opinion on the first topic (the nature of the small dollar commercial financing
8  market and small dollar commercial financing borrowers). (Mot. at p. 4:11-13, Dkt.
9  59.)

In offering his opinions, Professor Levitin explicitly states that "I express no opinion here on any ultimate question of whether the [Regulations] violate the First Amendment of the United States Constitution. Instead, the opinions I state here would merely be evidence that the trier of fact could use in reaching a conclusion on the ultimate issue." (Levitin Report, ¶ 3.) He further states that "My opinions here are confined to whether the disclosure of MCA terms [prior to the Regulations] was objectively confusing. I do not express any opinion about whether any particular MCA user finds the terms of any particular MCA confusing, but instead base my opinions on my knowledge of what the field of consumer finance understands about consumer comprehension of financing contracts." (*Id*. ¶ 89.)

### III. ARGUMENT

Expert testimony, which "rests on a reliable foundation and is relevant to the task at hand" is admissible. *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 597 (1993). The *Daubert* standard applies to both scientific and non-scientific experts. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999). Expert testimony is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline" and it is relevant "if the knowledge underlying it has a valid connection to the pertinent inquiry." *U.S. v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). Thus, the touchstones of

the expert-testimony inquiry are relevancy and reliability and Professor Levitin's opinions satisfy both.

### A. Professor Levitin's Report Is Relevant

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Professor Levitin's opinions are directly relevant to assess SBFA's allegations. The gravamen of SBFA's allegations is that the Regulations mischaracterize the sales-based financing its members offer. SBFA claims that sales-base financings are not loan transactions and thus, certain required disclosure metrics, which are applicable to loans, are inapplicable to sales-based financings. Professor Levitin directly responds to SBFA's allegations and shows similarities between sales-based financings and loan transactions, which supports disclosure metrics adopted by the Regulations. Thus, his report is highly relevant.

#### 1. Professor Levitin Possesses "Technical Knowledge" about MCAs

In *Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir. 1981), *modified on other grounds*, *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983), the court permitted a lawyer-expert witness to testify concerning standard language for a prospectus in high risk securities because the testimony was relevant to proof of scienter. *Id*. at 552. The court reasoned that "technical knowledge" the lawyer-expert possess would "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id*.; Fed. R. Evid. 702.

Professor Levitin's opinions are similar to those by the lawyer-expert in *Huddleston*. There are well over 100 lenders who offer MCAs in the United States (Yoo Decl., ¶ 2, Dkt. 68-1; Ex. 1, Dtk. 68-2), and thus are already or potentially subject to the Regulations. But due to SBFA's obstruction and repeated attempts to hinder discovery in this action, the Department's discovery was limited to a handful

4

1  of SBFA's members who offer MCAs. Given the number of MCA lenders in the
2  industry and the reach of the Regulations, it is vital for this court to understand
3  MCAs and the realities and issues associated with them. To that end, Professor
4  Levitin's report conveys comprehensive "technical knowledge" about MCAs.
5  *Huddleston*, 640 F.2d at 552. For example, he states that some MCAs have a "true-
6  up" provision and that there is "considerable variation" among MCAs in how these
7  provisions operate. (Levitin Report, ¶¶ 46-47.) One such variation is a true-up
8  provision that is entirely discretionary to a lender, and he uses Kapitus and Forward
9  Financing's MCAs to illustrate it. (*Id*. ¶¶ 48-49.) Likewise, he references Kapitus'
10 MCA to show some of the ways MCA lenders have recourse against borrowers.
11 (*Id*. ¶¶ 63-68, 72-75, 78-80.) He states that "If MCAs are in fact loans, then they fit
12 into the credit-cost paradigm [the Regulations require.]" (*Id*. ¶ 55.) To put it
13 another way, Professor Levitin frames the issue as "If X, then Y" and uses Kapitus'
14 MCA to illustrate why recourse options, as reflected in Kapitus' MCA, can make
15 an MCA X, which leads to Y.
16      Nevertheless, SBFA chooses to ignore, or fails to understand, the purpose of
17 illustrations and asserts that Professor Levitin's opinions on the second topic (the
18 nature and structure of MCAs), third topic (the relationship between performance
19 guaranties and personal guaranties in MCAs), and fourth topic (the difficulty in
20 determining whether a transaction is in fact a non-loan transaction) are
21 "quintessential inadmissible legal opinion." (Mot., pp. at pp. 4:18-5:12, Dkt. 59.)
22 SBFA even claims that Professor Levitin "concludes that, as a matter of law,
23 [Kapitus's MCA] represents a loan transaction." (*Id*. p. 5:6-7, Dkt. 59.) While
24 citing to three full pages from Professor Levitin's report to support its claim (*id*.),
25 SBFA did not, and cannot, point to any specific statement in his report because he
26 did not make such a statement. More importantly, whether Kapitus' MCA, or any
27 of SBFA members' MCA, is in fact a loan is not at issue, and he expressly
28 acknowledges so. (Lavitin Report, ¶¶ 55, 85.) Thus, Professor Levitin does not

render a legal opinion. Instead, he provides tools to assist the trier of fact in understanding the evidence—the nature of myriad MCA contracts SBFA contends are incorrectly characterized by the Regulations and why loan-paradigm disclosures are appropriate for MCAs. See *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008), *rev'd on other grounds, Horne v. Flores*, 557 U.S. 433 (2009) (Testimony from a lawyer-expert is permitted in cases where "highly complex and technical matters" present).

### 2. Courts Have Relied on Professor Levitin's Opinions

Acknowledging his expertise, multiple courts have permitted Professor Levitin's opinions. In *Consumer Fin. Prot. Bureau v. All Am. Check Cashing, Inc*. (*All Am. Check Cashing*), No. 3:16-cv-356-WHB-JCG, 2018 WL 9811820 (S.D. Miss. Mar. 21, 2018), he opined on "the nature, structure, and features of the check cashing and payday loan services provided by" the defendants. *Id*. at *1. His opinions also included that the defendants engaged in practices that were designed to "lock" consumers into check cashing transactions. *Id*. The defendants in that case moved to exclude his opinion for "impermissibly encroach[ing]" jury's role, but the court rejected it. *Id*. at *2. The federal district court found that defendants' argument was premised on "too narrow a reading" of his report and that Professor Levitin provided "detailed explanation [and analysis]" regarding technical aspects of defendants' business that "would not be within the common knowledge" of fact finders. *Id*. Similarly, a California state court relied extensively on Professor Levitin's testimony about indicia of unconscionability and California's regulation of various consumer financial products. (Yoo Decl., ¶ 3, Dkt. 68-1; Ex. 2 at pp. 33-34, 44, Dkt. 68-3.) So did the United States Court of Appeals for the Second Circuit, which relied on his testimony about mortgages and securitizations in general and certain duties the agreement at issue imposed. *Mazzei v. Money Store*, 829 F.3d 260, 271 (2nd Cir. 2016). The court found his express disclaimer stating

6

that he was "expressing no opinion whatsoever on the defendants in this case" meant that it was not impediment for the trial court to reply upon it. *Id*.

Professor Levitin's testimony in this case is not different from previous testimony he provided and was accepted by multiple courts. His report includes an overview of the structure of MCAs and regulatory concerns stemming from features of MCAs that resemble loans. (Levitin Report, ¶¶ 34-88.) He provides painstaking analysis on recourse options MCA lenders have against borrowers, using sample contracts SBFA provided as illustrations of how MCAs can operate to have loan-like characteristics. (*Id*. ¶¶ 59-76.) His expertise shines in discussing the inherently confusing nature of voluntary disclosures prior to the Regulations and pointing out striking graphic similarities between CFPB's Loan Model Form H-2 for consumer credit cost disclosures and some of MCA disclosures, which use the same format, but to disclose different information. (*Id*. ¶¶ 89-111.) None of them would be "within the common knowledge" of fact finders. *All Am. Check Cashing*, 2018 WL 9811820, at *2. His report also contains a similar disclaimer noted by the Second Circuit. (Levitin Report, ¶¶ 3, 89.) Therefore, this court should follow in the footsteps of other state and federal courts and reject SBFA's unfounded motion to exclude his opinions.

### 3. Even Applying Courts' Reasoning that Excluded His Opinions, Professor Levitin's Opinions Are Not Impermissible Legal Opinions

In the face of his relevant analysis and precedents accepting his opinions, SBFA attempts to paint Professor Levitin's opinions as inadmissible legal opinion and draws the court's attention to cases where his opinions were excluded. They are distinguishable, however. In *Andrade v. American First Finance*, Inc., No. 18-CV-06743-SK, 2023 WL 4238480, at *5 (N.D. Cal. June 27, 2023), the court found that his option "stems solely from his analysis of California law and his application of the facts to this law, neither of which are permissible from experts." Here, he does not apply any jurisdiction's law to any facts. At issue is whether the

1  Regulations pass muster of the standard set forth by *Zauderer v. Off. of*
2  *Disciplinary Counsel*, 471 U.S. 626 (1985), and he provides an express disclaimer
3  on this issue. (Levitin Report, ¶ 3.) In addition, the courts in *Am. Fid. Assurance*
4  *Co. v. Bank of New York Mellon*, No. CIV-11-1284-D, 2018 WL 11425260 (W.D.
5  Okla. Feb. 28, 2018) and *Nat'l Credit Union Admin. Bd. v. UBS Sec., LLC*, No. 12-
6  2591-JWL, 2017 WL 513970 (D. Kan. Feb. 8, 2017) excluded only some of his
7  opinions. In *Am. Fid. Assurance*, the court found that his opinion on "the legal
8  obligations of the parties under a contract" was not an appropriate subject for expert
9  testimony. *Am. Fid. Assurance,* 2018 WL 11425260, at *4. The court in *Nat'l*
10 *Credit Union* disallowed his testimony regarding "meaning of the statutory
11 language" or "whether [certain] transactions [are] true sales" under applicable
12 bankruptcy law or accounting principles. *Nat'l Credit Union,* 2017 WL 513970, at
13 *6. In both cases, the courts excluded his interpretation of specific facts of the case
14 because that is a role reserved for the trier of fact. In this case, he offers his
15 expertise on the MCA industry and how MCAs operates in general. Such
16 information is not tied to any specific facts of this case, but applicable to examine
17 the Regulations, which apply to any and all lenders who offers commercial
18 financing of $500,000 or less in California. Because MCAs are built on contracts
19 between lenders and borrowers, Professor Levitin's reading and knowledge on
20 MCA contracts is inevitable part of his opinions, but that does not render his
21 opinions inadmissible.
22      Notably, both courts in *Am. Fid. Assurance* and *Nat'l Credit Union* permitted
23 his testimony on topics that were "esoteric" or "highly complex," such as the nature
24 of the financial products at issue in those cases. *Nat'l Credit Union,* 2017 WL
25 513970, at *6; *Am. Fid. Assurance,* 2018 WL 11425260, at *4. This case too
26 concerns an "esoteric" and "highly complex" financial product—MCAs. "The idea
27 that a sale could be a loan is not intuitive at first glance, but jurisprudence has
28 historically treated a discounted sale of a payment obligation made with recourse

8

against the seller as a loan." (Levitin Report, ¶ 56.) His report discusses in detail historical developments of MCAs, the structure of MCAs, unique industry terminologies, and how various state and federal law treat them. (*Id*. ¶¶ 41-50, 56-58.) His report also explains what sets apart some MCAs from loans and illustrates, using SBFA members' contracts, ways in which MCAs can nevertheless collapse into loans. (*Id*. ¶¶ 59-81.) This background is relevant for the trier of fact to understand why the Department would be concerned about exempting MCAs from loan-type disclosures.

In the context of MCA disclosures, the APR is another subject that makes this case complex. SBFA characterizes Professor Levitin's opinion on the APR as "conjecture" (Mot. at p. 4:12, Dkt. 59), and yet its motion is silent as to why it amounts to conjecture. Contrary to its accusation, Professor Levitin bases his opinions on a number of state and federal law and relevant literature, all of which he provided citations to in his report. For example, Professor Levitin, citing an article published in the Federal Reserve Bulletin, states that "Consumers are generally aware of the APR" and value it as a tool to compare different forms of financing. (Levitin Report, ¶ 126.) Nevertheless, the APR is a complex subject and few understand how it is derived. In fact, even the California Senate analysis did not get it right. Professor Levitin points out that the Senate analysis "misses the point of the APR" because it erroneously stated that the APR represents "the price of the loan" when in fact the APR represents "the price [of the loan] relative to the amount of money loaned and for how long." (*Id*., ¶¶ 121-122; Yoo Decl., ¶ 4, Dkt. 68-1; Ex. 3 at pp. 58-59, Dkt. 68-3.) The Senate analysis also missed the context of the CFPB deemphasizing the APR in mortgage disclosures. (Yoo Decl., ¶ 4, Dkt. 68-1; Ex. 3 at p. 60, Dkt. 68-3.) Professor Levitin corrects the Senate analysis's error and explains the reasons that led to the CFPB's decision and why the same reasons do not apply to MCA disclosures. (Levitin Report, ¶¶ 126-131.) Professor Levitin's knowledge on the APR disclosure is not legal opinion. Rather, he

provides information that is so "esoteric" and specialized that fact finders would not know it without help from a qualified expert like him. *Nat'l Credit Union,* 2017 WL 513970, at *6.

In addition, the legislative history indicates that APR was a highly contested matter. In opposition to the APR, SBFA created and proposed an alternative metric called the Annualized Cost of Capital, which leads to "40% to 50% lower [rate] than an APR." (Yoo Decl., ¶¶ 5-7, Dtk. 68-1; Ex. 4 at p. 72-73, Dkt. 68-4; Ex. 5 at pp. 81-83, Dkt. 68-6; Ex. 6 at p. 86, Dkt. 68-7.) SBFA also did not shy away from publicly announcing that its "goal" is "to make sure an APR disclosure [is] not required in California" and that it wanted to "give other states [that consider California-style APR disclosure] pause." (Yoo Decl., ¶ 7, Dtk. 68-1; Ex. 6 at pp. 88, 92, Dtk. 68-7.) In light of SBFA's crusade against the APR disclosure, Professor Levitin's testimony can shed light on the history, implications, and benefits of the APR disclosure and rectify a slew of incorrect information and self-serving rhetoric pushed by SBFA. (Levitin Report, ¶¶ 132-147.)

### B. Professor Levitin's Report Is Based on Reliable Methodology

Professor Levitin's report discusses in depth the confusing nature and an associated risk of confusion stemming from voluntary disclosure of MCA terms prior to the Regulations. (Levitin Report, ¶¶ 89-111.) He starts the discussion by stating that "My opinions here are confined to whether the disclosure of MCA terms was *objectively* confusing. I do *not* express any opinion about whether any particular MCA user finds the terms of any particular MCA confusing, but instead base my opinions on my knowledge of what the field of consumer finance understands about consumer comprehension of financing contracts." (*Id*. ¶ 89, emphasis added.) He then uses two MCA contracts, found on the United States Securities and Exchange Commission's website that do not belong to SBFA's members, as well as Rapid's contract to illustrate why customers *could* be confused by the voluntary disclosures. (*Id*. ¶¶ 90-111.) "[A] small business owners *could*

readily be confused by [Rapid's disclosures]" because of the similarity between Rapid's disclosure and the Loan Model Form H-2, a model TILA disclosure form. (*Id*. ¶ 109, emphasis added.) "A reasonable small business owner *could* reasonably mistake the 'Daily Percentage' in the Rapid Finance disclosure for the APR because that is the only percentage rate that would be shown in the four-box structure on Form H-2." (*Id*. ¶ 110, emphasis added.) Nowhere in his report does he state that a small business will be or has actually been confused by Rapid's disclosure. In other words, Professor Levitin's opinions are not on *actual* confusion, but on the *possibility or risk* of confusion. As a logic proposition, something can be *confusing* without it actually resulting in anyone ultimately *being confused*. The importance of the distinction is that if something is confusing, it raises the *risk* that someone will be confused, and understanding that risk of confusion is relevant to the trier of fact understanding the governmental interest in enacting the Regulations. Professor Levitin's conclusion that the Regulations "were responding to a situation in which small businesses were confronted with inherently confusing, non-standardized cost disclosures [as illustrated above]" further confirms that he uses Rapid's contract as an example and that he is not opining about Rapid's disclosure. (*Id*. ¶ 111.) Furthermore, his observation supports the Department's needs to protect California small businesses from deceptive lending practices, which is a sufficient governmental interest under *Zauderer*.

From his measured statements, SBFA jumps to conclusions and asserts that Professor Levitin concluded that "Rapid Finance's contract *is* confusing to small business because it mimics TILA's H-2 Loan Model Form." (Mot., p. 7:2-3, Dkt. 59, emphasis added.) SBFA then proceeds to criticize his report for not having reliable methodology to support his opinions that "small businesses *were* confused by sales-based financing." (*Id*. at p. 7:21-23, Dkt. 59, emphasis added.) Its erroneous reading of Professor Levitin's opinions is followed by a string of

11

irrelevant and inapplicable cases. SBFA cites five cases, all concerning claims of trademark infringement, where reliable surveys were key to determine whether customers were in fact confused by the alleged infringement. (*Id*. at p. 8:1-12, Dkt. 59.) In other words, the surveys were key evidence of loss causation, and its admissibility depended on the standard for the admission of scientific expert testimony. The court in *Tovey v. Nike, Inc*., No. 1:12-CV-448, 2014 WL 3510636, at *4 (N.D. Ohio Jul. 10, 2014), one of the cases SBFA cites, put it this way: "Generally, a party alleging trademark infringement relies upon a consumer survey to prove the likelihood of consumer confusion in a particular case… [E]xpert testimony on the issue of consumer confusion that is not supported by survey evidence is insufficiently reliable to be admitted." Unlike the five cases SBFA relied on, this case has nothing to do with trademark infringement and the Department is not offering Professor Levitin as a scientific expert to establish loss causation. Instead, he is being offered as a nonscientific expert to provide background on the underlying policy problem—the risk of borrower confusion.

As a nonscientific expert, Professor Levitin is not subject to any particular methodological requirement for reliability. *Kumho Tire*, 526 U.S. at 156. His opinions are grounded in his professional experience as an observer and scholar of financial markets and regulation. This includes his knowledge of the scholarly literature from economics, finance, and law on disclosure, studies undertaken by federal regulators, federal and state law, cases, and his own research. This background more than provides a basis for reliability for Professor Levitin's opinions on the risk of borrower confusion, as SBFA would have learned had it taken the trouble to depose Professor Levitin before moving to exclude his opinions. Indeed, the Ninth Circuit has previously explained that expert testimony from a legal expert about policy concerns can be helpful when policy issues are relevant, as they are here under *Zauderer*. *Flores*, 516 F.3d at 1166 ("In this hearing, which was, in large part, an inquiry into education law and policy, the

[legal] expert testimony may well have been helpful. It was, in any event, not prejudicial in this bench trial, where there was no danger that a jury might give too much credence to a legal expert."). SBFA does not question Professor Levitin's deep expertise in financial products and their regulation. There is a more-than-adequate basis for the reliability of Professor Levitin's nonscientific opinions about the policy concern of risk of borrower confusion from non-standardized voluntary price disclosures by MCA lenders. Thus, his entire report is a "product of reliable principles and methods" and admissible. Fed. R. Evid. 702.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Exclude Defendant's Expert Adam J. Levitin's opinions.

Dated:  October 6, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
LISA W. CHAO
MICHAEL D. GOWE
Supervising Deputy Attorneys General

*/s/ Rachel J. Yoo*
Rachel J. Yoo
Douglas J. Beteta
Deputy Attorney General

*Attorneys for Defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation*

SA2022803044
84186915.docx

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation, certifies that this brief contains 4135 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 6, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
LISA W. CHAO
MICHAEL D. GOWE
Supervising Deputy Attorneys General

*/s/ Rachel J. Yoo*

Rachel J. Yoo
Douglas J. Beteta
Deputy Attorney General

*Attorneys for Defendant Clothilde Hewlett, solely in her official capacity as Commissioner of the California Department of Financial Protection and Innovation*

# CERTIFICATE OF SERVICE

| Case Name: | **Small Business Finance Association v. Clothilde Hewlett** | No. | **22-cv-08775-RGK-SK** |
|---|---|---|---|

I hereby certify that on November 3, 2023, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S OPPOSITION TO MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANT'S EXPERT ADAM J. LEVITIN**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 3, 2023, at San Diego, California.

| M. Aguilar | Signature |
|---|---|
| Declarant | |

SA2022803044
84230684.docx