UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendant's Motion for Summary Judgment and Related Motions [DEs 52, 57, 59, 64]

## I.  INTRODUCTION

On December 2, 2022, Small Business Finance Association ("Plaintiff") filed a Complaint against Clothilde Hewlett ("Defendant") in her official capacity as Commissioner of the California Department of Financial Protection and Innovation ("DFPI"), challenging the validity of DFPI's recently adopted regulations (the "Regulations") that require small business financing providers to make certain disclosures about the costs and terms of financial products offered to prospective customers. (ECF No. 1.) Plaintiff asserts two claims: (1) violation of 42 U.S.C. § 1983 based on a violation of the First Amendment, and (2) preemption under the federal Truth-in-Lending Act ("TILA").

Presently before the Court are four related motions: (1) Defendant's Motion for Summary Judgment, ECF No. 52; (2) a group of nonparties' Motion for Leave to File an Amicus Brief in support of the Motion for Summary Judgment, ECF No. 57; (3) Plaintiff's Motion to Exclude Certain Opinions of Defendant's Expert Adam Levitin, ECF No. 59; and (4) Defendant's Motion in Limine[1] to Exclude a Report from Plaintiff's Expert Barbara Kinsley, ECF No. 64.

For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** the other three Motions.

## II.  FACTUAL BACKGROUND

The following facts are uncontroverted, unless otherwise stated:

---

[1] Defendant's Motion in Limine would normally be construed as an untimely motion to exclude, as it was filed after the motion cutoff date and seeks to exclude evidence at summary judgment. However, the parties have fully briefed the motion, so the Court finds the matter ripe for review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

### A. The Small Business Financing Market

This case is about the validity of certain product disclosures in the small business financing market. In recent years, this market has gradually shifted away from traditional banks towards a new group of nonbank financing companies that provide products and services online. (Mot. Summ. J., "Browsing to Borrow: 'Mom & Pop' Small Business Perspective on Online Lenders" (hereinafter "FRB Study"), Ex. 5 at 7, ECF No. 52-7.) These online financers offer simplified application processes, quick turnaround times, and access to credit to businesses denied by traditional lenders. (*Id.* at 3.) As a result, the online financers provide a source of additional capital and increased competition in the commercial financing space. (*Id.* at 3, 5.)

While this expansion of credit access is a positive development, the practices of these financers have drawn concerns from federal and state regulators. (*Id.* at 5; Levitin Report ¶ 51, ECF No. 52-18.) For instance, in a survey of small businesses, the Federal Reserve Board found that a majority of survey participants expressed dissatisfaction with the high interest rates or unfavorable repayment terms of online financing products. (FRB Study at 5.) Another concern revealed in the study was that the financers use a wide range of words and phrases in presenting their products, making it difficult to comparison shop. (*Id.*) The participants also reported that some companies hid important costs in footnotes or fine print or omitted basic information altogether. (*Id.* at 15, 25.)

When asked for suggestions to improve the online financing process, the participants recommended disclosures that are (1) upfront, (2) expressed in clear, familiar terminology, (3) standardized, (4) inclusive of all costs, and (5) explicit about the terms of prepayment. (*Id.* at 29–30.) The participants were shown a proposed sample disclosure table presenting key terms of a hypothetical transaction. (*Id.* at 27.) The participants' response was overwhelmingly positive. (*Id.*) They identified "APR," "repayment amount," "frequency of payments," and "prepayment penalties" as the most important information disclosed in the table. (*Id.* at 28.)

### B. State Bill 1235 and the Regulations

On September 30, 2018, California enacted Senate Bill ("SB") 1235, codified at California Financial Codes sections 22800–22805. The statute requires that an offer of commercial financing for $500,000 or less be accompanied by disclosures of: (1) the amount of funds provided, (2) the total dollar cost of financing, (3) the term or estimated term, (4) the method, frequency, and amount of payments, (5) a description of prepayment policies, and (6) the total cost of financing expressed as an annualized rate. Cal. Fin. Code §§ 22802(b), 22803(a). The statute also tasked the DFPI with issuing regulations implementing the disclosure requirements. *Id.* § 22804.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

On June 9, 2022, the DFPI promulgated the Regulations, effective December 9, 2022, setting forth in detail the required disclosures for (1) close-end loans, (2) open-end lines of credit ("OECs"), (3) factoring transactions, (4) sales-based financings ("SBFs"), (5) leases, (6) asset-based lending, and (7) a catchall category of "all other" financial products. 10 Cal. Code Regs. §§ 910–17. The exact content and format of disclosures differ depending on the category of product. *See generally id.* Pertinent to this action are the disclosures for OECs and SBFs.

    1.    *OECs and OEC Disclosures*

In an OEC transaction, a small business receives an approval from a financer to draw on a credit line up to a maximum amount. (*See e.g.*, Mot. Summ. J., Ex. 12 at 2, ECF No. 52-14.) The small business has discretion as to when and in what amount to make each drawing, so long as the maximum is not exceeded. (*Id.* at 3.) And the small business pays interest on only the balance drawn. (*Id.*) Under the Regulations, a financer offering an OEC must present a disclosure table that includes, among other things, the following:

- An explanation that "the calculations below are based on an initial draw of your full Approved Credit Limit . . . and assumes that you will pay off the draw entirely according to the agreed payment schedule, that you miss no payments, and that do not re-draw on the line. Actual costs may differ substantially." 10 Cal. Code Regs. § 911(a)(2)

- The Annual Percentage Rate ("APR"), which is the total cost of the financing expressed as a yearly rate. *Id.* § 911(a)(4)

- The estimated finance charge, which includes all fees, interests, and other costs imposed by the financer as incidental to or condition of extending credit. *Id.* § 911(a)(5).

- The total estimated payment, assuming the small business makes only minimum required payments. *Id.* § 911(a)(6).

- The amount and frequency of estimated periodic payments. *Id.* § 911(a)(7).

- The consequences of prepayment. *Id.* § 911(a)(10)–(12).

    2.    *SBFs and SBF Disclosures*

In an SBF transaction, a small business receives an upfront payment (an "Advance") in exchange for a promise to pay a financer a percentage of the small business's future receipts until a specific amount is reached (a "Payback"). (Levitin Report ¶ 41.) The transaction is not structured as a loan, but as a "purchase and sale" of future receivables. (*Id.* ¶ 34.) The financer earns a profit by charging various

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

fees, as well as a "discount," calculated as the dollar difference between the Advance and the Payback. (*Id.* ¶¶ 41–42.) Under the Regulations, a financer offering an SBF must present a disclosure table that includes, among other things, the following:

- The dollar amount of the Advance, minus any prepaid finance charge. 10 Cal. Code Regs. § 914(a)(2).

- The estimated APR, and the following explanation: "This calculation assumes your estimated average monthly income . . . will be [average monthly income estimated]. Since your actual income may vary from our estimate, your effective APR may also vary." *Id.* § 914(a)(3).

- The finance charge, including various fees and the discount. *Id.* § 914(a)(4).

- The total estimated payment the small business will make during the term of the financing. *Id.* § 914(a)(5).

- The amount and frequency of estimated periodic payments. *Id.* § 914(a)(6).

- The percentage of future receipts sold. *Id.* § 914(a)(7).

- The estimated term of the financing, and an explanation of the assumptions used to calculate the estimated term. *Id.* § 914(a)(8).

- The consequences of prepayment. *Id.* § 914(a)(9)–(11).

C. **Plaintiff's Lawsuit**

Plaintiff is an advocacy organization that "educate[s] policymakers and regulators about the technology-driven platforms emerging in the small-business market." (Compl. ¶ 4.) Plaintiff's members are online financers offering commercial financing products to small businesses. (*Id.* ¶ 5.) Among the products offered are OECs and SBFs. (*Id.* ¶ 9.)

After DFPI promulgated the Regulations, Plaintiff brought the instant action on behalf of its members, seeking injunctive and declaratory relief to prevent enforcement of the Regulations. Specifically, Plaintiff claims that (1) the compelled disclosures violate its members' free speech rights under the First Amendment, and (2) the Regulations are preempted by TILA to the extent the APR and finance charge disclosures are inconsistent with TILA's requirements. (*Id.* ¶ 58–69.) Defendant seeks summary judgment on both claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

### III. MOTION FOR SUMMARY JUDGMENT

#### A. Judicial Standard

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" only if dispute about them may affect the outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.*

On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that no evidence supports the non-moving party's case. *See Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). To defeat a summary judgment motion, the non-moving party may not merely rely on her pleadings or on conclusory statements. *See Celotex*, 477 U.S. at 324. Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Rather, the non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324.

#### B. Discussion

Defendant seeks summary judgment on three grounds: (1) Plaintiff lacks standing to challenge the Regulations; (2) the Regulations do not violate the First Amendment under the test for compelled commercial speech established in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 417 U.S. 626 (1985); and (3) the Regulations are not preempted by TILA. The Court evaluates these arguments in turn.

##### 1. *Standing*

To establish standing under Article III of the Constitution, an association bringing a claim on behalf of its members must show that "(1) its individual members would have standing in their own right, (2) the interests at stake in the litigation are germane to the organization's purposes, and (3) the case may be litigated without participation by individual members of the association." *Airline Serv. Providers Ass'n v. L.A. World Airports*, 873 F.3d 1074, 1078 (9th Cir. 2017). Defendant challenges only the third element, arguing that "a detailed analysis of each members' contracts and practices" is needed to establish a First Amendment violation. (Mot. Summ. J. at 15.)

"Although the first two requirements are constitutional in nature, the third is prudential." *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003). It focuses on "administrative convenience and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

efficiency," and protects against "the hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 556 (1996). Consistent with this aim, courts permit associational standing where "limited participation" by individual members may be required. *See, e.g., City of S. Lake Tahoe Retirees Ass'n v. City of S. Lake Tahoe*, 2017 WL 2779013, at *4 (E.D. Cal. June 27, 2017).

According to Defendant, however, extensive participation by Plaintiff's members is needed to determine if and how the Regulations apply to each member's products. The Court disagrees. In discovery, Plaintiff identified three members whose products typify the products of Plaintiff's members. While each member may offer slightly different terms, Defendant has not pointed to any material differences that would require an individualized inquiry. Moreover, the existing record contains evidence from only six of Plaintiff's numerous members. Participation has been "limited," not "extensive." Accordingly, the Court rejects Defendant's first argument and finds that Plaintiff has standing to assert its claims.

  2. *First Amendment*

Defendant next argues that the § 1983 claim fails because the Regulations comport with the First Amendment. "The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 731 (9th Cir. 2017) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980)). But compared to other types of constitutionally protected speech, commercial speech is accorded a "lesser protection." *Id.*

The Supreme Court recognizes two levels of scrutiny governing compelled commercial speech. *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1275 (9th Cir. 2023). One level is intermediate scrutiny under *Central Hudson*, which requires "the government to 'directly advance' a 'substantial' governmental interest, and the means chosen [] not be 'more extensive than necessary.'" *Id.* (citation omitted). The other is a lower standard under *Zauderer*, requiring only that a compelled disclosure be "reasonably related" to a substantial government interest and not be "unjustified or unduly burdensome." *Id.* (citing *Zauderer*, 471 U.S. at 651 (1985)). But *Zauderer* is only available in certain contexts. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372 (2018) (*NIFLA*). Specifically, *Zauderer* applies to compelled commercial speech that is "purely factual and uncontroversial." *Id.*

Here, Defendant's principal argument is that the Regulations satisfy *Zauderer* as a matter of law. To succeed, Defendant must prove that the disclosures are (1) purely factual, (2) noncontroversial, (3) not unduly burdensome, and (4) reasonably related to a substantial governmental interest. *See Cal.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

*Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 477 (9th Cir. 2022) (*CERT*). The Court analyzes each element below.

        a.    *Purely Factual*

To be purely factual, a disclosure must be "literally true" and "not misleading." *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 847 (9th Cir. 2019). Plaintiff challenges the Regulations on both grounds. Specifically, Plaintiff asserts that the disclosures for SBFs are "literally false," and that the disclosures for both SBFs and OECs are misleading because they are "wildly inaccurate."

        i.    Whether SBF Disclosures Are Literally True

As discussed above, in an SBF transaction, a financer pays a small business an Advance in exchange for the small business remitting a Payback from a percentage of the business's future receipts. The difference between the Advance amount and the Payback amount is called the "discount," and it comprises most, if not all, of the financer's profit on the transaction.

The Regulations require the financer to disclose, among other things, (1) the Payback amount, called "Estimated Total Payment Amount," and (2) the total cost of financing, including fees and discount due at closing, called "Finance Charge." 10 Cal. Code Regs. § 914(a). Further, in certain situations, the Regulations require the financer to provide explanations that "[t]he cost of this financing is based upon fees charged by [financer] rather than interest that accrues over time," and that "[y]our finance charge will not increase if you take longer to pay off what you owe." *Id.* Plaintiff argues that certain words in these disclosures render the disclosures "literally false."

First, Plaintiff argues that the word "fees" is false in the explanatory statement "[t]he cost of this financing is based upon fees charged by [financer] rather than interest that accrues over time." Plaintiff contends that the cost of an SBF is based on a "discount," not "fees." But operationally, discounts are similar to "origination fees" (also called "closing fees" or "points"), which are commonly charged in financing transactions. Both discounts and origination fees are fixed and charged at origination and deducted from the financing proceeds. (*See e.g.,* Mot. Summ. J., Ex. 14 at 2.) And unlike interest, neither can be reduced by paying back the financer early. (Levitin Report ¶ 131.) While the term "fees" is broader in scope than the term "discount," using "fees" here does not render the statement false. In fact, using "fees" might be more accurate in cases where the financer charges both a "closing fee" and a "discount." (*E.g.*, Ex. 14.)

Next, Plaintiff challenges the word "payment" in the phrase "Estimated Total Payment Amount," and the word "owe" in the statement "[y]our finance charge will not increase if you take longer to pay off what you owe." According to Plaintiff, "payment" and "owe" falsely connote a loan, and thus should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

be replaced with "remittance" and "due," respectively. These are distinctions without a difference. Making a "payment" means the same as making a "remittance"; an amount "owed" is no different than an amount "due." Nothing in the record suggests that recipients of the disclosures think otherwise. Rather than splitting hairs, the Court finds that the terms "payment" and "owe" are truthful descriptors within the SBF disclosures. *See Nationwide Biweekly Admin., Inc.*, 873 F.3d at 734 (discerning no "meaningful difference" between the terms "approved" and "authorized"). Therefore, the Court finds that the SBF disclosures are literally true.

       ii.  Whether SBF and OEC Disclosures Are Misleading

"[A] statement may be literally true but nonetheless misleading and, in that sense, untrue." *CTIA*, 928 F.3d at 847. To be misleading, a disclosure must create an important but false implication about the product offered. *CERT*, 29 F.4th at 479. For instance, a warning label that a chemical is a "known" carcinogen is misleading if scientific studies have shown that the chemical increases risk of cancer in *animals* only, not humans. *Id.* Similarly, a notice that a building is constructed of "unreinforced masonry . . . [which] may be unsafe in the event of a major earthquake," is misleading if the building has undergone seismic retrofitting that markedly improved the building's earthquake resistance. *Masonry Bldg. Owners of Or. v. Wheeler*, 394 F. Supp. 3d 1279, 1300 (D. Or. 2019).

Plaintiff asserts that the SBF and OEC disclosures are misleading because (1) they make the transactions appear like traditional loans, and (2) the estimated figures for payments, duration, and APR are "wildly inaccurate." Defendant contends that Plaintiff's arguments are unsupported by evidence. Rather than misleading, the disclosures are helpful tools that uncloak otherwise hidden or opaque contractual terms and allow for comparison shopping.

       (a)  Disclosure of Loan-Like Terms

Plaintiff argues that the SBF and OEC disclosures mislead recipients into believing that the products are loans by using words (e.g., "payment" and "owe") typically associated with loans. To support this argument, Plaintiff relies on an expert report from Dr. Barbara Kingsley, who conducted a survey of small business owners in California. (Def.'s Mot. in Limine, Kingsley Report, Ex. 2, ECF No. 64-2.) Kingsley placed survey participants in three groups: Group 1 received sample disclosures for traditional loans, Group 2 sample disclosures for OECs, and Group 3 sample disclosures for SBFs. (*Id.* ¶ 16.) Kingsley then asked the participants a series of questions to determine their understanding of the products. (*Id.* ¶ 30.) She found that participants in Groups 2 and 3 were far less likely to correctly identify the type of product disclosed (e.g., traditional loan, OEC, or SBF). (*Id.* ¶ 41.) Thus, she concluded that the OEC and SBF disclosures misled participants into believing the products were loans. (*Id.* ¶ 53.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

    The survey was flawed in two key aspects. First, Kingsley failed to control for the effect of receiving or not receiving the disclosures. The control group was Group 1, which received disclosures for loans. (*Id.* ¶ 48.) Group 1's results were compared with results from Groups 2 and 3. Therefore, the survey tested only the difference between receiving a loan disclosure versus receiving an OEC disclosure or SBF disclosure. That Groups 2 and 3 did worse in identifying the products does not suggest the disclosures are themselves misleading. Rather, it simply reflects the fact that OECs and SBFs are more complex and less well-understood by customers than traditional loans—a problem previously identified by federal regulators. (*See* FRB Study at 10.) Second, although the disclosures were meant to be read alongside offers, Kingsley never provided a copy of the offers to the participants. (Kingsley Report ¶ 16.) The offers contain the terms and features of the transaction—in particular, the features that differentiate OECs and SBFs from traditional loans. Without an offer to review, Groups 2 and 3 were understandably confused about the products. Therefore, the survey does not support a reasonable inference that the disclosures are misleading.

    To the contrary, the record shows that the disclosures will help small businesses understand the cost of SBFs and OECs and do comparison shopping. As the Federal Reserve Board's survey indicated, small businesses often misunderstand the costs of SBFs and OECs, mistake them for loans, and fail to consider fees and other charges hidden in footnotes and fine print. (FRB Study at 25.) Small businesses have asked for standardized disclosures that uncloak the true cost of financing and highlight useful information like "APR, repayment amount, frequency of payments, and prepayment penalties." (*Id.* at 28.) The Regulations mandate such disclosures, thereby helping small businesses make informed credit decisions.

    As a further indication that the disclosures are not misleading, several of Plaintiff's members admitted that they have no record of customers complaining about the disclosures, which have been mandated since December 2022. (Price Decl. ¶ 5, ECF No. 52-11; Turrentine Decl. ¶ 4, ECF No. 52-12; Reward Network Resp. to Subpoena at 4, ECF No. 52-13; Tumulty Dep. at 310:4–10, ECF No. 52-26.) The CEO of one financer, Forward Financing, was deposed about a spreadsheet that purportedly contained a list of 34 customer complaints about the disclosures. (Pl.'s Opp'n Summ. J., Bakes Dep., Ex. 1 at 45:5–21, ECF No. 72-3.) However, the deposition transcript, as it stands, does not demonstrate that any customer was misled by the disclosures. Crucially, the CEO could not explain whether the customers were complaining about the existence of the disclosures, or merely that the disclosed costs were too high. (*Id.* at 49:7–20.) The fact a handful of customers might have complained about the disclosures is insufficient to establish that the disclosures are misleading. Accordingly, the record does not demonstrate that the SBF and OEC disclosures mislead recipients into believing that the products are traditional loans.

        (b)    Inaccurate Estimates

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

Plaintiff also argues that the SBF and OEC disclosures are misleading because the estimated figures for payment, term, and APR vary significantly from actual results. In essence, this is an argument that the disclosures mislead recipients into believing that the products will perform as estimated. As evidence, Plaintiff proffers testimonies by its members as to the statistical deviations between the historical results of their SBFs and OECs and the estimates disclosed under the Regulations.[2]

The evidence falls short of showing that the estimates are misleading. The difference between actual and estimated figures is due to the difference between what transpires in real life versus what occurs in the hypothetical scenarios assumed in the disclosures. However, the fact that these are assumptions is explicitly stated. For OECs, the top of the disclosure page states that the calculations "**are based on** an initial draw of your full Approved Credit Limit . . . and **assume** that you will pay off the draw entirely according to the agreed payment schedule, that you miss no payments, and that you do not re-draw on this line. **Actual costs may differ substantially**." 10 Cal. Code Regs. § 911(a)(2) (emphasis added). For SBFs, the disclosures state in multiple places that the calculation "**assumes** your estimated monthly income . . . will be [a certain amount]," and that "**your actual income may vary**." *Id.* § 914(a) (emphasis added). Any reasonable person receiving the disclosures would be on notice that the calculations are based on the assumptions stated. If assumptions change, results will too. The estimates do not purport to predict the future, but rather help small businesses compare financing products by holding certain variables constant.

Finally, there is no evidence that the estimates are mathematically incorrect. Nor is there evidence that small businesses misunderstand the estimates' purpose. As such, the record does not indicate that the estimates are misleading. Because the SBF and OEC disclosures are literally true and not misleading, they are "purely factual."

        b.    *Noncontroversial*

The Court next evaluates whether the SBF and OEC disclosures are also noncontroversial. To determine whether a statement is controversial, the Ninth Circuit considers whether the statement is both subjectively controversial and objectively controversial. *Nat'l Ass'n of Wheat Growers,* 85 F.4th at 1277. Subjective controversy exists where the statement is "fundamentally at odds with [the speaker's] business." *Id.* Objective controversy exists where the statement "elevates one side of a legitimately unresolved scientific debate." *Id.*

---

[2] Defendant objects to this evidence on hearsay and best evidence grounds. To the extent the Court relies upon any objected evidence, the objections are **OVERRULED**. Objections to evidence not relied upon are **DENIED** as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

Here, Plaintiff focuses only on the objective prong, arguing that the SBF disclosures are controversial because there is a "vigorous debate" in the commercial financing industry about whether an "Estimated APR" should be disclosed in connection with an SBF transaction. As evidence, Plaintiff points to the legislative minutes related to SB 1235's enactment. (Def.'s Mot. Summ. J., Ex. 6, ECF No. 52-8.) The minutes state the arguments for and against the inclusion of "Estimated APR." (*Id.* at 11.) One financing company supported inclusion, while two associations (including Plaintiff) opposed. (*Id.*)

The existence of *some disagreement* about the usefulness of an "Estimated APR" disclosure does not render the disclosure "controversial" for First Amendment purposes. "'[U]ncontroversial' does not mean 'unanimous.'" *Nat'l Ass'n of Wheat Growers,* 85 F.4th at 1278. That an issue was debated during legislative rulemaking and is being litigated does not necessarily establish a "controversy." Otherwise, every law challenged would be "controversial," rendering the "noncontroversial" requirement meaningless. The critical question is whether the "Estimated APR" term, like the statements in *CERT* and *National Association of Wheat Growers* about a chemical's toxicity, has been expressly rejected by reputable authorities on the matter. There is no such evidence here. At most, the record shows that some federal regulators have expressed concerns about the usefulness of APR disclosures in consumer loans, though the regulators still require APR disclosures for those loans. (Levitin Report ¶¶ 127–29.) The regulators have expressed no such concerns for SBFs, which are commercial products.

Nor is the disclosure subjectively controversial. An "Estimated APR" is simply a mathematical calculation based on the terms of a contract and assumptions stated on the page. Presenting this figure is not "fundamentally at odds" with a financer's business. The figure is not a statement ascribing moral qualities to a product, or a warning that the product is unsafe. Rather, the figure is similar to a law school's bar passage rate, the disclosure of which the Ninth Circuit has upheld as noncontroversial. *S. California Inst. of L. v. Biggers*, 613 F. App'x 665, 666 (9th Cir. 2015). Recipients can draw their own conclusions about the figure's relevance and importance. And from the standpoint of small businesses, there is nothing controversial about receiving a disclosure that they have been requesting for years. Accordingly, the SBF disclosures are noncontroversial.

As for OEC disclosures, Plaintiff's only argument is that TILA employs a different methodology for calculating APR in consumer lines of credit. *See* 12 C.F.R. § 1026.14. But that alone is insufficient to establish a controversy. TILA does not apply to commercial financing, which involves different policy considerations than consumer financing, warranting a different approach. There is no evidence that any authority has rejected the use of the Regulation's methodology in the commercial financing setting. Accordingly, the OEC disclosures are also noncontroversial.

      c.     *Not Unduly Burdensome*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

To be unduly burdensome, a compelled disclosure must be so comprehensive that it drowns out the speaker's own message. *CTIA*, 928 F.3d at 849. While there is no bright line rule, the Ninth Circuit has upheld "relatively brief disclosures" that are "reasonable and not disproportionate" and do not impede the speaker's ability to send its commercial offers. *Nationwide Biweekly Admin., Inc.*, 873 F.3d at 734. By contrast, the court struck down a warning label covering 20% of an advertisement because a label half that size could accomplish the same purpose. *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 757 (9th Cir. 2019).

In this case, the Regulations require a one- or two-page disclosure to be attached to a commercial financing offer that typically spans ten to twenty pages. Plaintiff does not argue that such disclosures drown out financing offers or are unnecessarily long. Instead, Plaintiff argues that the Regulations are unduly burdensome because Plaintiff's members have spent hundreds of thousands of dollars to comply and will need to dedicate hundreds more employee-hours to remain compliant. But the critical question here is whether the disclosures impede speech. They do not. First, there is no evidence that the cost of compliance is so prohibitively high that it would prevent a financer's commercial speech (i.e., render financing offers uneconomical to make). Second, Plaintiff admits that nothing in the Regulations prevents its members from making any statement outside of the disclosures. (Pl.'s Resp. to Req. for Admis. at 7, ECF 52-10.) Because the Regulations do not impede the members' speech, they are not unduly burdensome.

          d.      *Reasonably Related to a Substantial Government Interest*

The parties do not dispute that the disclosures are reasonably related to the state's substantial interest in protecting small businesses from unwittingly entering into unaffordable financing contracts. Indeed, the record is replete with evidence that the state has a legitimate concern about misinformation or insufficient information in commercial financing offers, and that the Regulations are intended to alleviate this concern. Accordingly, the final requirement under *Zauderer* is easily satisfied.

To sum up, the undisputed evidence establishes that each element under *Zauderer* is satisfied. Accordingly, the Court **GRANTS** Defendant summary judgment as to the First Amendment claim.

          3.      *TILA Preemption*

In general, there are three types of federal preemption: (1) express preemption, (2) conflict preemption, and (3) field preemption. *CTIA*, 928 F.3d at 849. Here, only conflict preemption is at issue. Conflict preemption occurs "when compliance with both federal and state regulations is a physical impossibility," or "when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015) (citation and alterations omitted). Defendant argues that Plaintiff's preemption claim fails because the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

Court must defer to a ruling by the Consumer Financial Protection Bureau ("CFPB") that the Regulations are not preempted by TILA.

In the context of TILA preemption, Congress authorized the CFPB to determine whether state law conflicts with federal law. 15 U.S.C. § 1610(a)(1). Pursuant to this authority, on March 31, 2023, the CFPB issued its decision that SB 1235—the statute from which the Regulations arise—and similar laws enacted by New York, Utah, and Virginia do not conflict with TILA. 88 FR 19214-02. The CFPB determined that the state laws will not "stand as an obstacle to the accomplishment or execution of TILA's purposes." *Id.* TILA's purpose is to ensure consumers, not businesses, make informed credit decisions. *Id.* To serve that purpose, TILA applies wherever a potential borrower's *primary purpose* is to obtain credit for personal, family, or household use. 12 CFR § 1026.3. While it may be possible for someone to borrow primarily for a business purpose and use the proceeds to a lesser extent for a personal purpose, Congress did not believe regulating such transactions was necessary to achieve its legislative aim. 88 FR 19214-02. As such, the CFPB determined that conflict preemption did not apply to state laws governing commercial financing. *Id.*

The CFPB's determination is afforded a particularly high level of judicial deference. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980). The Court will not disturb the agency's interpretation of TILA unless the interpretation is "demonstrably irrational." *Id.* Here, there is no reason to reject the CFPB's determination. Having reviewed the agency's analysis, the Court declines to overrule its rational conclusion that TILA does not preempt SB 1235 (and by extension the Regulations). Accordingly, the Court **GRANTS** Defendant summary judgment as to the preemption claim.

### IV. OTHER RELATED MOTIONS

Separate from but related to the Motion for Summary Judgment are: (1) a group of nonparties' Motion for Leave to File an Amicus Brief; (2) Plaintiff's Motion to Exclude certain expert opinions from Adam Levitin, and (3) Defendant's Motion in Limine to exclude the expert report from Barbara Kingsley. The Court **DENIES** the motions as follows:

- The amicus motion, which primarily argues that the Regulations are constitutional under *Central Hudson*, is **DENIED** as it is not helpful to the proceedings.

- The evidentiary motions are **DENIED** as moot because the Court does not rely on any of the objected evidence in ruling on the Motion for Summary Judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08775-RGK-SK | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Small Business Finance Association v. Clothilde Hewlett* | | |

### V.     **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment, **DENIES** the Motion for Leave to File an Amicus Brief, and **DENIES** as moot both Plaintiff's Motion to Exclude and Defendant's Motion in Limine.  Defendant shall lodge a proposed judgment consistent with this order within 7 days from the issuance of this order.

The Court Trial set for December 12, 2023 is hereby vacated and taken OFF-CALENDAR.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | JRE/dc |